UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| **ALYSSON MILLS, IN HER CAPACITY AS RECEIVER FOR ARTHUR LAMAR ADAMS AND MADISON TIMBER PROPERTIES, LLC,** | **Case No. 3:19-cv-364-CWR-FKB** |
| | **Arising out of Case No. 3:18-cv-252,** *Securities and Exchange Commission v. Arthur Lamar Adams and Madison Timber Properties, LLC* |
| **Plaintiff** | |
| **v.** | **Hon. Carlton W. Reeves, District Judge** |
| **THE UPS STORE, INC.; HERRING VENTURES, LLC d/b/a THE UPS STORE;  AUSTIN ELSEN; TAMMIE ELSEN;  COURTNEY HERRING; DIANE LOFTON;  CHANDLER WESTOVER; RAWLINGS & MACINNIS, PA; TAMMY VINSON; and  JEANNIE CHISHOLM,** | |
| **Defendants** | |

### THE R&M PARTIES' MEMORANDUM BRIEF IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT

Defendants Rawlings & MacInnis, P.A. ("R&M"), Tammy Vinson ("Vinson"), and Jeannie Chisholm ("Chisholm") (sometimes collectively referred to as the "R&M Parties") file this their Memorandum Brief in Support of their Motion to Dismiss the Amended Complaint [Doc. #14]  filed by Plaintiff Alysson Mills, in her capacity as the Court-appointed Receiver for the estates of Lamar Adams and Madison Timber Properties, LLC, (the "Receiver"), and, in support of the same, would show unto the Court as follows:

### I. INTRODUCTION

In the Amended Complaint [Doc. #14] filed on June 13, 2019, the Receiver asserts claims of civil conspiracy, aiding and abetting, recklessness, gross negligence, or negligence against the R&M Parties and negligent supervision and retention against R&M stemming from the Ponzi scheme perpetrated by Lamar Adams ("Adams") through  Madison Timber Properties, LLC ("Madison

Timber"). Though the Receiver premises her claims on alleged negligent acts by the R&M Parties, the factual allegations in the Amended Complaint sound in fraud. As the factual allegations sound in fraud, the Receiver is required to plead all factual allegations relating to the fraud under the heightened pleadings standard for fraud contained in Federal Rule of Civil Procedure ("F.R.C.P.") 9(b).

The Receiver, however, has not pled the factual allegations in the Amended Complaint in accordance with F.R.C.P. 9(b) as the Receiver has not pled the "who, what, when, and where" specifics required for fraud claims in connection with the alleged conduct by the R&M Parties. As the Receiver's factual allegations are insufficient to meet the pleadings requirements of F.R.C.P. 9(b), the Amended Complaint should be dismissed.

In addition, the Receiver fails to plead sufficient factual allegations in accordance with the less stringent pleadings standard of F.R.C.P. 8(a). The United States Supreme Court has made clear that conclusory allegations or legal conclusions cast as factual allegations are insufficient to meet the pleadings standard of F.R.C.P. 8(a). The Receiver, in the Amended Complaint, has made conclusory allegations and/or legal conclusions that the R&M Parties have engaged in conduct constituting and have committed the torts of civil conspiracy, aiding and abetting, and negligent supervision and retention. As the Receiver has not supported her claims with anything more than conclusory allegations and legal conclusions, the Amended Complaint fails to meet the required pleadings standard of F.R.C.P. 8(a), and the same should be dismissed.

Furthermore, despite the Receiver's allegations to the contrary, one cannot negligently conspire or negligently aid and abet. Both civil conspiracy and aiding and abetting claims require some degree of knowledge and some intentional action, which would require that the underlying tort for such claims would have to be based upon an underlying intentional tort. Negligence is not an intentional tort. Since the Receiver fails to plead fraud with particularity, then the underlying tort for civil conspiracy and

aiding and abetting cannot be a claim of negligence. Accordingly, the claims of civil conspiracy and aiding and abetting must necessarily fail.

Notwithstanding the above, the equitable doctrine of *in pari delicto* applies to preclude the Receiver, on behalf of Adams and Madison Timber, from asserting claims, other than fraudulent transfer claims, against third parties. The doctrine of *in pari delicto* prevents one wrongdoer from asserting a claim for damages against another wrongdoer. While the R&M Parties deny any wrongdoing, the doctrine should still apply to foreclose any attempt by the Receiver to collect damages on behalf of Adams/Madison Timber, the true wrongdoers.

For these and other reasons set forth below, the Amended Complaint against the R&M Parties should be dismissed.

## II. FACTS ALLEGED BY THE RECEIVER[1]

In the Amended Complaint, the Receiver alleges the R&M Parties contributed to the Ponzi scheme perpetrated by Adams through Madison Timber. Am. Compl. at ¶16[2]. Adams represented to investors that if they invested in Madison Timber, they would receive a return on their principal investment of between 12 and 20% per annum, which would far exceed any standard investment. Am. Compl. at ¶17. Adams represented that such investments would be used to acquire deeds to timber,

---

[1] The R&M Parties reserve their rights to deny all factual allegations made by the Receiver and to raise all applicable defenses concerning the same. With regard to the Receiver's allegations that the R&M Parties notarized fraudulent timber deeds that contained either a blank signature page for the grantor or contained a signature of the grantor that was forged by Adams, the R&M Parties deny and reserve all rights they may have concerning such allegations as Adams has admitted that he would have the R&M Parties notarize only his signature and then he would scan the document and use a program to manipulate the notary acknowledgment so that it stated both Adams and the grantor signed before the notary and would then forge the grantor's signature. Notwithstanding the above, in connection with their Motion to Dismiss and Memorandum in Support only, the R&M Parties acknowledge that the factual allegations in the Amended Complaint must be taken as true when challenging the sufficiency of the pleadings at the motion to dismiss stage. See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] Citations to the Amended Complaint [Doc. #14] are abbreviated as Am. Compl.

which would then be sold to lumber mills for an amount that would pay the principal of the investment plus the interest. Am. Compl. at ¶18. As part of the investment transaction, investors would receive a promissory note, predated checks for twelve monthly installments, a timber deed, and cutting agreement. Am. Compl. at ¶19. Those deeds and agreements given by Adams to investors were fraudulent. Am. Compl. at ¶20.

Adams' Ponzi scheme allegedly grew from approximately $10 million received from investors to approximately $160 million between 2011 and 2018. Am. Compl. at ¶22. The Receiver claims that as of April 19, 2018, there were 501 outstanding promissory notes (which are not identified), with the total amount outstanding on the notes of $85 million. Am. Compl. at ¶23. After the discovery of Adams' Ponzi scheme, Adams was charged with criminal violations of wire fraud and bank fraud and pleaded guilty to wire fraud and "admitted to all of the conduct of the entire scheme and artifice to defraud." Am. Compl. at ¶24.

In addition to the criminal charges, the Securities and Exchange Commission (the "SEC") instituted a civil suit against Adams and Madison Timber for fraud in the purchase or sale of securities and fraud in the offer or sale of securities in the underlying action styled *S.E.C. v. Arthur Lamar Adams et al.*, No. 3:18-cv-252, in the United States District Court for the Southern District of Mississippi, Northern Division (the "SEC Case"). Am. Compl. at ¶25-27. The Complaint in the SEC Case alleges that Adams/Madison Timber "employed a device, scheme, or artifice to defraud; and engaged in acts, practices, or courses of business that operated or would operate as a fraud or deceit[.]" Am. Compl. at ¶27.

The SEC requested that the Court appoint a Receiver, and the Court appointed the Receiver in the SEC Case. Am. Compl. at ¶3. As part of her powers, the Receiver may institute additional civil suits that relate to the SEC Case in order to recover assets for the estate of Adams/Madison Timber as

related to the Ponzi scheme (the "Receivership Estate") or to institute actions that Adams and Madison Timber could institute. Am. Compl. at ¶¶3-4; see also Order Appointing Receiver [Doc. #3] in the SEC Case. The Receiver claims to have instituted such an action herein.

The Receiver alleges in this action that the R&M Parties contributed to the aforementioned fraudulent actions of Adams/Madison Timber by notarizing the fraudulent timber deeds (which have not been identified) given by Adams to each investor (which have not been identified) in Madison Timber. Am. Compl. at ¶29. The Receiver alleges that the R&M Parties, namely Vinson and Chisholm, notarized fraudulent attestations as the timber deeds purported to have signatures of grantors (which have not been identified), but no grantor ever personally appeared before Vinson or Chisholm for such attestations. Am. Compl. at ¶¶29-31. The Receiver further alleges that Vinson and Chisholm notarized fraudulent timber deeds that contained either a blank signature line for the grantor or contained a signature that was forged by Adams. Am. Compl. at ¶¶31, 33.

According to the Receiver, Adams fabricated fraudulent timber deeds for thousands of investments (which have not been specified or identified). Am. Compl. at ¶34. The Receiver admits that "[a] precise accounting of the number of fake timber deeds carelessly and fraudulently notarized by Defendants is impossible[,]" and that the R&M Parties, contrary to the Receiver's claim that Adams fabricated the fraudulent timber deeds, "effectively made their places of employment fake timber deed factories." Am. Compl. at ¶35. The Receiver further alleges that the substantial number of fraudulent timber deeds notarized by the Vinson and Chisholm (which was not specified) meant they "knew or should have known that the deeds were fake" and that they "were complicit in Adams's intent to defraud[.]" Am. Compl. at ¶50. Despite these allegations, the Receiver includes only one alleged representative sample, reproduced in the body of the Amended Complaint, of an alleged fraudulent attestation notarized by Vinson, and has failed to reference or attached any originals or copies of any

fraudulent timber deeds, which are the subject of her claim or any specific information (i.e. who, what, when, and where) concerning the same. See generally Am. Compl. and at ¶30.

As Vinson and Chisholm allegedly notarized the fraudulent timber deeds, the Receiver claims that they violated their duties to comply with the rules governing notaries as promulgated by the Mississippi Secretary of State. Am. Compl. at ¶¶37-52. Specifically, the Receiver claims that Vinson and Chisholm violated: (1) Rule 5.1 for allegedly notarizing fraudulent timber deeds when the grantors/landowners were not present; (2) Rule 5.6 for allegedly notarizing fraudulent timber deeds that had blank signature lines for the grantors; (3) Rule 5.7 for using the office of the notary to allegedly assist in Adams' fraudulent activities; and (4) Rule 5.15 for allegedly failing to keep logs of notarial acts. Am. Compl. at ¶¶37-50. Vinson and Chisholm, according to the Receiver, should have known they were notarizing fraudulent timber deeds based on the alleged substantial number (which was not specified) of timber deeds allegedly notarized by them (which were not identified) and/or because the grantor listed on the fraudulent timber deeds (which were not identified) never personally appeared before them. Am. Compl. at ¶¶ 50-51. Based upon these alleged violations, the Receiver claims Vinson and Chisholm were reckless or negligent in performing their notarial duties, and that based upon such behavior, they aided and abetted and conspired with Adams in the perpetuation of his Ponzi scheme. See Am. Compl. generally.

In addition, the Receiver claims that because Vinson and Chisholm allegedly notarized the fraudulent timber deeds as notaries for R&M and performing notarizations was in the scope of their employment, R&M is vicariously liable for the acts of Vinson and Chisholm. Am. Compl. at ¶¶ 50-51. Finally, the Receiver alleges that R&M are separately liable for negligent retention and supervision of its employees. Am. Compl. at ¶¶ 112-113. According to the Receiver, R&M allegedly knew or should have known that Vinson and Chisholm were engaging in reckless or negligent conduct in notarizing

fraudulent timber deeds based on the number (which was not specified) of timber deeds notarized by them (which were not identified) and that such conduct violated the rules and regulations concerning notaries. Am. Compl. at ¶¶ 112-114.

### III. ARGUMENT AND AUTHORITIES

1. **The Receiver has failed to allege facts with particularity as required by the heightened pleadings standard in F.R.C.P. 9(b), and, even so, the Receiver has failed to plead sufficient facts as required by the less stringent F.R.C.P. 8 pleadings standard.**

The core of the Receiver's claims against the R&M Parties relies on the allegations that at some unspecified time the R&M Parties notarized an unspecified substantial number of unidentified fraudulent timber deeds, which Adams used at some unspecified time to recruit unidentified investors for his Ponzi scheme. The Receiver essentially claims that but for the alleged notarizations of the fraudulent timber deeds by the R&M Parties, Adams would not have been able to perpetuate and grow his Ponzi scheme as he did. Based on the alleged acts by the R&M Parties, the Receiver argues that the R&M Parties were reckless, grossly negligent, and/or negligent. The Receiver also claims, without providing any specifics concerning any alleged agreement with Adams, that based upon the above alleged acts, the R&M Parties aided and abetted and conspired with Adams to support his Ponzi scheme. The Receiver, however, wholly fails to plead these allegations with any particularity as required by F.R.C.P. 9(b). In addition, the Receiver has failed to meet the less stringent pleadings standard of F.R.C.P. 8(a) as the Receiver has not pled factual allegations, as opposed to conclusory allegations and legal conclusions, that would show that the Receiver is entitled to any relief from the R&M Parties. For these reasons, as discussed more fully below, the Amended Complaint should be dismissed.

   A. **The Receiver's negligence claims sound in fraud, but she has failed to plead fraud in accordance with the heightened pleadings standards of F.R.C.P. 9(b).**

As an initial point, the Receiver does not assert a cause of action for fraud in the Amended Complaint despite the Receiver's clear attempt to base her claims against the R&M Parties on the

fraudulent activities of Adams/Madison Timber in which she alleges the R&M Parties participated. The Receiver begins her allegations in the Amended Complaint by stating that Adams, through Madison Timber, "operated a Ponzi scheme that defrauded hundreds of investors." Am. Compl. at Intro. The Receiver goes on to repeatedly claim that Adams committed fraud or defrauded investors or had an "intent to defraud," which the Receiver alleges the R&M Parties knew about and were complicit in. See Am. Compl. at ¶¶ 2, 24, 25, 27, 50, 72, 82, 92, and 104. The Receiver also repeatedly alleges that the R&M Parties "fraudulently" notarized fraudulent timber deeds or "committed actual fraud." See Am. Compl. at ¶¶ 84, 85, 87, 94, 95, 97, 104, and 113. Though the Receiver claims that the R&M Parties committed acts of negligence, the contents of the factual allegations clearly show the Receiver is alleging the R&M Parties committed acts of fraud and/or aided and abetted and/or conspired with Adams concerning his fraudulent actions. As the Receiver is clearly making factual allegations that sound in fraud and attempting to premise the alleged liability of the R&M Parties on the fraudulent actions of Adams, the Receiver is required to plead these fraud allegations with particularity under the heightened pleadings standard in F.R.C.P. 9(b). She has failed to do so.

F.R.C.P. 9(b) states that: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Specifically, one must state the "who, what, when, and where" of the fraud alleged. See 2 Moore's Federal Practice § 9.03(b) (3d ed. 2012). The Fifth Circuit has elaborated that "[p]leading fraud with particularity . . . requires 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby.'" *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (citation omitted). Though the Receiver couches her claims in terms of negligence, the substance of the claims alleged against the R&M Parties sound in fraud, and should be held to the heightened pleading standard

of F.R.C.P. 9(b).

The Receiver does not explicitly claim that the R&M Parties committed fraud. However, the Receiver relies on the fraudulent conduct of Adams/Madison Timber to support her allegations against the R&M Parties as she alleges that the R&M Parties participated in the fraudulent actions of Adams/Madison Timber or that the R&M Parties committed their own alleged acts of fraud in furtherance of the Ponzi scheme. Without reiterating each instance in which the Receiver makes allegations concerning or relating to fraud, it is apparent on the face of the Amended Complaint that the Receiver is actually alleging that the R&M Parties committed fraud, they aided and abetted Adams/Madison Timber in committing fraud, and they engaged in a civil conspiracy with Adams/Madison Timber to commit fraud. Based on the factual allegations in the Amended Complaint, the Receiver is clearly alleging fraud, while attempting to avoid the heightened pleadings standard of F.R.C.P. 9(b) by claiming the R&M Parties committed negligence. This should not be allowed. The Receiver must be required to comply with F.R.C.P. 9(b), which she has not done.

In the Amended Complaint, the Receiver makes general allegations that the R&M Parties notarized an unspecified number of unidentified timber deeds that they knew or should have known were fraudulent based on the fact that no grantor was ever present at any notarization of any timber deed and that the unspecified enormous number of unidentified timber deeds notarized indicated the timber deeds were improper. Based on these general factual allegations, the Receiver surmises that the R&M Parties were negligent and that they aided and abetted and/or conspired with Adams/Madison Timber in perpetrating the Ponzi scheme. The Receiver, however, does not identify or specify any instances of who, when, where, or what concerning any alleged acts by the R&M Parties.

The Receiver has not alleged with any specificity any instance in which any of the R&M Parties notarized a fraudulent timber deed (i.e. the who, when, where, or what), or how such alleged acts would

9

constitute a fraud by them. As stated by the Fifth Circuit, a party must plead with particularity the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby[,]" to support a fraud claim. The Receiver has not stated how many fraudulent timber deeds were allegedly notarized by the R&M Parties, she has not stated when or where such fraudulent timber deeds were allegedly notarized by the R&M Parties, and she has not stated "what that person obtained" from such fraud. As to the R&M Parties, there is no allegation that they received anything from any of the fraudulent activities of Adams/Madison Timber because the R&M Parties did not receive anything from Adams/Madison Timber in connection with the notarizations of the alleged fraudulent timber deeds. The Receiver has not met the heightened pleading requirements for any of her claims premised on fraud, and, therefore, the Amended Complaint against the R&M Parties should be dismissed.

**B.    The Receiver has likewise failed to plead the claims of aiding and abetting and civil conspiracy with particularity under F.R.C.P. 9(b).**

The Receiver clearly bases her claims against the R&M Parties on allegations of fraud. As the Receiver has failed to plead fraud with particularity, she has likewise failed to plead her claims of aiding and abetting and civil conspiracy with particularity. Aiding and abetting and civil conspiracy claims must both be premised on an underlying tort. In this case, the underlying tort claimed by the Receiver is fraud. Yet, the Receiver has not stated with specificity any alleged act of fraud to support any aiding and abetting or civil conspiracy claim against the R&M Parties. Further, the Receiver has not stated with specificity any of the required elements of an aiding and abetting of a fraud or a civil conspiracy to commit fraud claim.

It should be noted that if the Receiver contends that, despite all of her allegations of fraud, the true cause of action is negligence, then the Receiver cannot maintain her claims for aiding and abetting or civil conspiracy. As will be addressed below, the claims for aiding and abetting and civil conspiracy

10

in this case cannot be premised on negligence by the R&M Parties as Adams committed fraudulent acts. The Receiver cannot have it both ways. She cannot allege that the R&M Parties "were complicit in Adams's intent to defraud" or that "but for defendants' careless and fraudulent notarial acts, Madison Timber would not have continuously grown" to support her claims of aiding and abetting and civil conspiracy, then assert claims for negligence to avoid having to plead with particularity as required by F.R.C.P. 9(b). Am. Compl. at ¶50. Therefore, the claims of aiding and abetting and civil conspiracy must be pled with particularity under F.R.C.P. 9(b), but the Receiver has failed to do so. The Amended Complaint, therefore, should be dismissed.

### i.     Civil Conspiracy.

The Receiver has not stated with particularity a claim for civil conspiracy to commit fraud pursuant to F.R.C.P. 9(b). As mentioned above, a claim for civil conspiracy requires an underlying tort to support such a claim. Under the heightened pleading standards of F.R.C.P. 9(b), the Receiver should be required to plead her claim for civil conspiracy with particularity as the civil conspiracy claim is premised on the R&M Parties' alleged complicity in the fraudulent acts of Adams. The Receiver, however, has not pled this claim with specificity as she has failed to allege any fact concerning the who, what, when, or where of any act of civil conspiracy or what the R&M Parties received for allegedly participating in any conspiracy. As such, the Receiver has not sufficiently pled her claim for civil conspiracy, and such claim should be dismissed.

Under Mississippi law,  "[t]o establish a civil conspiracy, the plaintiff must prove (1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, (4) and damages to the plaintiff as a proximate result." *American Zurich Insurance Company v. Guilbeaux*, 2018 WL 1661629 *6 (S.D. Miss. April 5, 2018) (quoting *Bradley v. Kelley Bros. Contractors, Inc.*, 117 So. 3d 331, 338 (Miss. Ct. App. 2013).

"Furthermore, 'a civil conspiracy claim cannot stand alone, but must be based on an underlying tort.'" *Fikes v. Wal-Mart Stores, Inc.*, 813 F.Supp.2d 815, 822 (S.D. Miss. 2011) (citation omitted).

First, the Receiver's allegations sound in fraud. Specifically as to her civil conspiracy claim, the Receiver alleges that the R&M Parties "were complicit in Adam's intent to defraud[,]" that the R&M Parties committed "careless and fraudulent notarial acts[,]" and that the R&M Parties "committed actual fraud[.]"  Am. Compl. at ¶¶ 82, 84, 85, and 87. Based on these allegations, the Receiver is clearly relying on an alleged fraud as the underlying tort to support her civil conspiracy claim. The Receiver clearly alleges that Adams committed fraud and does not allege that Adams committed negligence. If the R&M Parties and Adams had an agreement to commit an unlawful purpose, which they did not, the agreement would have to be to accomplish the same unlawful purpose (i.e. to commit fraud). Yet, the Receiver is essentially claiming that one party allegedly committed an act of negligence in conspiring with another party to commit a fraud. This cannot be the case. Therefore, the civil conspiracy claim must be premised on the fraudulent acts of Adams/Madison Timber and must be pled with particularity under F.R.C.P. 9(b). The Receiver, however, has not pled factual allegations with particularity concerning her civil conspiracy claim.

Specifically, the Receiver has not pled facts supporting her allegation that the R&M Parties had an agreement with Adams or what that agreement was as required for a civil conspiracy. "It is elementary that a conspiracy requires an agreement between the coconspirators." *Gallagher Bassett Services, Inc. v. Jeffcoat*, 887 So. 2d 786, 786 (¶37) (Miss. 2004) (citing *Brown v. State*, 796 So. 2d 223, 226-27 (Miss. 2001)). "[T]he persons must agree in order for a conspiracy to exist[.]"  *Id.* The only allegation made by the Receiver concerning any agreement was the conclusory allegation that the "Defendants agreed to assist Adams by notarizing fake timber deeds[.]" Am. Compl. at ¶79. This allegation, however, wholly fails to meet the heightened pleadings standard of F.R.C.P. 9(b).

Next, the Receiver has not alleged that Adams and the R&M Parties, and particularly which of the R&M Parties, had any agreement with Adams/Madison Timber. One of the underlying purposes of the heightened pleadings standard of F.R.C.P. 9(b) is to put each defendant on notice of the specific allegation against them, and such purpose is not met when allegations are made to "defendants" as a group. See *Quintero Community Ass'n Inc. v. F.D.I.C.*, 792 F.3d 1002, 1010 (8th Cir. 2015) ("allegations of wrongdoing by all [Defendants] 'generally, in group pleading fashion . . . does not satisfy Rule 9(b).'") (citation omitted). The Receiver, however, has not alleged that any particular defendant (i.e. Vinson, Chisholm, and/or R&M) had any agreement with Adams/Madison Timber in connection with the alleged notarizations of the fraudulent timber deeds. Moreover, the Receiver has not alleged with any particularity when or where such alleged agreement was entered into. Further, the Receiver has not alleged any particular fact concerning the content of any alleged agreement, including what the R&M Parties allegedly received in connection with any alleged agreement. As such, this allegation has not been pled with particularity.

In addition, a civil conspiracy would require that both parties knowingly entered into such agreement to knowingly accomplish an unlawful purpose. An agreement requires a "meeting of the minds" and in the context of a civil conspiracy, the alleged parties (i.e. the R&M Parties and Adams/Madison Timber) must have intended to enter into an agreement for the same unlawful purpose (i.e. the notarization of fraudulent timber deeds for use by Adams/Madison Timber in the Ponzi scheme). To support her civil conspiracy claim, the Receiver alleges that the unlawful purpose was the notarization of the fraudulent timber deeds by the R&M Parties to support Adams in his "intent to defraud" investors in Madison Timber. Am. Compl. at ¶82. Yet, the Receiver's other allegations clearly contradict this allegation.

The Receiver alleges that the R&M Parties "knew or should have known that the timber deeds

13

were fake, given the volume of deeds Adams presented without the grantors-landowners present." Am. Compl. at ¶82. The allegation that the R&M Parties' knowledge of the falsity of such deeds is premised only on the unspecified number of deeds or the failure of an unidentified grantor to appear belies the argument that the R&M Parties knowingly conspired with Adams. If the R&M Parties had agreed to notarize fraudulent timber deeds for Adams, which they did not, the Receiver would not have to rely on the number of deeds or the non-presence of a grantor to impute knowledge of the Ponzi scheme to the R&M Parties. She does so, however, because the Receiver is obviously unable to make any factual allegation concerning an alleged agreement for an unlawful purpose between the R&M Parties and Adams.

Specifically, the Receiver cannot make any particular factual allegations that the R&M Parties knowingly notarized fraudulent timber deeds when the Receiver has presented no original timber deeds showing the timber deeds were fraudulent when notarized or that the R&M Parties knew Adams was using fraudulent timber deeds in the perpetuation of his Ponzi scheme. Particularly, the Receiver has not stated when the R&M Parties allegedly notarized the fraudulent timber deeds or how many fraudulent timber deeds the R&M Parties allegedly notarized in furtherance of this purported conspiracy.

Based on the above, the civil conspiracy claim must be premised on the underlying tort of fraud, and such claim must be plead with particularity. The Receiver, however, has failed to plead the civil conspiracy claim with particularity, and the same should be dismissed.

### ii.    Aiding and Abetting.

As an initial point, Mississippi courts have yet to recognize a cognizable claim of aiding and abetting. Until Mississippi courts recognize a cause of action for aiding and abetting, the Receiver should not be permitted to allege such a claim against the R&M Parties. Therefore, the Receiver's claim for

14

aiding and abetting should be dismissed with prejudice.

It is anticipated that the Receiver will argue that this Court has previously made an *Erie* guess that the Mississippi Supreme Court would recognize a cause of action for aiding and abetting under the Restatement (Second) of Torts §876. See *Dale v. Ala Acquisitions, Inc.*, 203 F.Supp.2d 694, 700-01 (S.D. Miss. 2002). Should this Court find that the Dale Court correctly found that the Mississippi Supreme Court would recognize a claim for aiding and abetting under §876(b), the Receiver has still failed to sufficiently plead such a claim under F.R.C.P. 9(b).

An aiding and abetting claim, like a civil conspiracy claim, must be supported by an underlying tort. See *Fikes*, 813 F.Supp.2d at 822-23 (finding that regardless of whether the Mississippi Supreme Court would recognize a cause of action for aiding and abetting, an aiding and abetting claim requires an underlying tort, which was not sufficiently pled in that case). Just as with the civil conspiracy claim, the Receiver alleges that the R&M Parties "were complicit in Adam's intent to defraud[,]" that the R&M Parties committed "careless and fraudulent notarial acts[,]" and that the R&M Parties "committed actual fraud[.]" Am. Compl. at ¶¶ 92, 94, 95, and 97. As the Receiver's allegations sound in fraud, the Receiver must also plead her claim of aiding and abetting with particularity.

"Rule 9(b)'s particularity requirement for fraud applies equally to a claim for aiding and abetting." *Quintero*, 792 F.3d at 1010 (quoting *E–Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 663 (8th Cir. 2012)). "Thus, the complaint must set forth the who, what, when, where, and how surrounding the alleged fraud and specify what was obtained as a result." *Id.* (internal citations and quotations omitted). For an aiding and abetting claim, section 876(b) of the Restatement provides: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other . . . ." Based on Section 876(b), there are three essential elements of an

aiding and abetting claim: (1) knowledge of other's conduct; (2) knowledge that such conduct is a breach of duty; and (3) the giving of substantial assistance or encouragement to the other. The Receiver, however, has failed to assert factual allegations with particularity to support these elements.

The threshold requirement of an aiding and abetting claim is knowledge of the other party's conduct. But, just as with her civil conspiracy claim, the Receiver has not pled any particular factual allegations that the R&M Parties' had knowledge of Adams' Ponzi scheme at the time the R&M Parties allegedly notarized the fraudulent timber deeds. The Receiver has not stated when the R&M Parties allegedly knew of Adams' conduct.  The Receiver merely makes a conclusory allegation that the R&M Parties "knew or should have known that the timber deeds were fake, given the volume of deeds Adams presented to Defendants without the grantors-landowners present."  Am. Compl. at ¶92. The Receiver does not state who of the R&M Parties knew or should have known or when any of the R&M Parties knew or should have known that Adams was engaging in a Ponzi scheme.

Further, the Receiver has not stated the number of fraudulent timber deeds allegedly notarized by the R&M Parties. She also has not stated that the R&M Parties knew the timber deeds were fraudulent at the time each one was allegedly notarized. Adams has admitted to forging the signatures of grantor. Am. Compl. at pg. 2 and at ¶¶ 31, 33. Adams very well may have forged and manipulated the timber deeds after the notarizations of seemingly legitimate timber deeds. Without the original timber deeds with the original notarizations, it is merely speculation by the Receiver that the R&M Parties knowingly notarized fraudulent timber deeds, much less that they knew of Adams' use of the timber deeds in a Ponzi scheme.

Further, the Receiver has not pled with particularity the who, what, when, or where of the final element of aiding and abetting, the same being substantial assistance. The Receiver makes the conclusory allegation that the R&M Parties provided substantial assistance to Adams/Madison Timber. Am. Compl.

at ¶¶89, 96. The Receiver goes on to allege that Madison Timber relied on the fraudulent timber deeds to recruit investors and that, but for the fraudulent timber deeds, Madison Timber could not have grown. Am. Compl. at ¶94. Yet, the Receiver has not made specific allegations concerning the number of fraudulent timber deeds that were allegedly notarized by the R&M Parties or how that number substantially assisted Adams/Madison Timber in the Ponzi scheme or helped it grow. The Receiver concludes that the Ponzi scheme could not have grown without the fraudulent timber deeds allegedly notarized by the R&M Parties, but states no particular allegations concerning the who, what, when, or where the Ponzi scheme grew based on such unspecified/unidentified fraudulent timber deeds. For these reasons, the Receiver has failed to plead the aiding and abetting claim with particularity, and the same should be dismissed.

### C.      The Receiver has failed to sufficiently plead claims under F.R.C.P. 8(a).

 It is anticipated that despite the allegations of fraud in the Amended Complaint, the Receiver will argue that the claims against the R&M Parties are premised on negligent, not fraudulent, acts. Even if her claims were premised on negligence, which they are not, the Receiver has still failed to sufficiently plead her claims against the R&M Parties under the notice pleadings standard contained in F.R.C.P. 8(a).

There are two considerations the Court must take into account at the motion to dismiss stage. First, "a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A court likewise does not have to accept as true "a legal conclusion couched as a factual allegation." *Id.* Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679 (citing *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the

pleader is entitled to relief.'" *Id.* (quoting F.R.C.P. 8(a)(2)).

     **i.**     **Civil Conspiracy.**

Even if the Receiver maintains that negligence, not fraud, supports her claim for civil conspiracy, then her claim should still be dismissed as negligence cannot support a claim for civil conspiracy in this case, and, even so, the Receiver has failed to allege sufficient facts to demonstrate a cognizable claim for civil conspiracy. The Receiver fails to make factual allegations beyond her conclusory allegations that the R&M Parties and Adams conspired to commit the same unlawful purpose.

A claim for civil conspiracy requires: "(1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, (4) and damages to the plaintiff as a proximate result." *Guilbeaux*, 2018 WL 1661629 at *6 (citation omitted). In her civil conspiracy claim, the Receiver alleges that "Defendants conspired with Adams to commit the tortious acts alleged in this amended complaint[,] and that "Defendants agreed to assist Adams by notarizing fake timber deeds[.]" Am. Compl. at ¶¶78-79. These allegations that the R&M Parties agreed to assist Adams with his Ponzi scheme by notarizing fraudulent timber deeds is clearly a conclusory allegation in which the Receiver attempts to cast a legal conclusion as a factual allegation. Such allegations, therefore, should not be considered true and cannot support the Receiver's claims.

A court at the motion to dismiss phase is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.*

The Receiver at no other time mentions any alleged agreement between the R&M Parties and Adams, states no facts concerning any alleged agreement, and only states the R&M Parties "agreed" with Adams to notarize the fraudulent deeds as an attempt to meet the required elements of a civil conspiracy claim. Am. Compl. at ¶79. Further, the Receiver concludes that "Defendants' careless and fraudulent notarial acts are a proximate cause of the debts of the Receivership Estate." Am. Compl. at ¶85. All of these allegations clearly demonstrate the Receiver's attempt to cast a conclusory allegation or legal conclusion as a factual allegation as she is merely reciting the elements of a claim for civil conspiracy. This is contrary to what is allowed in a pleading pursuant to *Twombly*, and, as such, the Receiver has not sufficiently pled that an agreement between Adams and the R&M Parties existed even under F.R.C.P. 8(a).

### ii.    Aiding and Abetting.

The deficiencies in the Receiver's allegations in her civil conspiracy claim likewise cause her claim for aiding and abetting to fail. The Receiver makes the conclusory allegation that "Defendants aided and abetted Adams by notarizing fake timber deeds that investors received in exchange for their investments in Madison Timber." Am. Compl. at ¶90. She likewise concludes that the R&M Parties "knew or should have known" about Adams' Ponzi scheme and that the R&M Parties substantially contributed to the growth of the Ponzi scheme. Am. Compl. at ¶¶92, 94. Again, the Receiver is making conclusory allegations and attempts to cast legal conclusions as factual allegations. Just as the Receiver fails to sufficiently plead her civil conspiracy claim, by relying on the same conclusory allegations, she also fails to sufficiently plead her aiding and abetting claim against the R&M Parties and the same should be dismissed.

### iii.    Negligent Supervision and Retention.

In addition to the claims against the R&M Parties, the Receiver also alleges that R&M was

negligent in its supervision and retention of Vinson and Chisholm. The Receiver states that "[a]n employer will be liable for negligent hiring or retention of his employee when an employee injures a third party if the employer knew or should have known of the employee's incompetence or unfitness." Am. Compl. at ¶112 (quoting *Backstrom v. Briar Hill Baptist Church, Inc.*, 184 So. 3d 323, 327 (Miss. Ct. App. 2016) and quoting *Parmenter v. J&B Enters. Inc.*, 99 So. 3d 207, 217 (Miss. Ct. App. 2007)). Just as with the aforementioned claims, the Receiver also fails to state a cognizable claim for negligent supervision and retention.

Though the heightened pleadings standard would not apply to a claim for negligent retention and supervision, the Receiver still has not pled sufficient facts to support such a claim under the more liberal pleadings standard in F.R.C.P. 8(a). The essential elements of a negligent supervision and retention claim are that (1) an employer knew or should have known of (2) an employee's incompetence or unfitness; and (3) an injury to a third party by the employee. Just as with her civil conspiracy and aiding and abetting claims, the Receiver has not alleged that Vinson or Chisholm were incompetent or unfit as notaries or that R&M had actual or constructive knowledge of the same if that were true, which is denied.

First, the Receiver alleges that "R&M knew or should have known that their employees were carelessly and fraudulently legitimizing fake deeds."  Am. Compl. at ¶113. The Receiver makes this conclusory allegation based on the "volume of deeds presented by Adams."  Am. Compl. at ¶113. Yet, the Receiver does not state how many deeds were presented. The Receiver also does not state what number of deeds would have been sufficient to put R&M on notice that its employees were allegedly notarizing fraudulent deeds. As mentioned by the Receiver, part of R&M's business includes real estate work, which involves notarizations of deeds. The Receiver also does not state when R&M should have had this knowledge concerning the number of alleged fraudulent timber deeds notarized.

20

In addition, the Receiver alleges that R&M should have known of their employees violations of the rules for notaries, specifically that the notaries did not keep a log of their notarial acts in violation of the rules. Am. Compl. at ¶114. The Receiver, however, fails to show how this failure by the notaries to keep logs causes R&M to be negligent. Negligence requires that such negligent acts be the proximate causation of an injury and cause damages. But, there is no injury caused by a failure to keep notarial logs. A notarization can occur whether a logbook is kept by the notary or not. Such a failure to keep a logbook may be a violation of the rules of notaries, but a violation of the rules of notaries does not necessarily give rise to a private right of action. Whether notary logs were kept are of no consequence to any injury allegedly sustained by any third party. Based on the above, the Receiver has failed to sufficiently plead a claim for negligent supervision and retention against R&M.

## 2. Negligence cannot be the underlying tort to support a civil conspiracy or aiding and abetting claim.

Furthermore, despite the Receiver's allegations to the contrary, neither a civil conspiracy claim nor an aiding and abetting claim can be based on the underlying tort of negligence. Both civil conspiracy and aiding and abetting claims require some degree of knowledge and some intentional action, meaning civil conspiracy and aiding and abetting are intentional torts. See 16 Am. Jur. 2d Conspiracy § 51 (2009) (parties cannot engage in a civil conspiracy to be negligent as civil conspiracy is an intentional tort requiring specific intent). Further, one cannot conspire to be negligent. Therefore, the underlying tort for such claims would have to be based upon an underlying intentional tort.

One cannot negligently conspire or aid and abet as both of those claims require a knowing element, which would necessarily require that those claims be intentional torts. As civil conspiracy and aiding and abetting are intentional torts, it would be necessary that the underlying tort supporting these claims would likewise have to be an intentional tort. Negligence is not an intentional tort. As such, if the Receiver fails to plead fraud with particularity, then the underlying tort for civil conspiracy and

aiding and abetting cannot be a claim of negligence.

Though, based upon counsel's research, Mississippi courts have not explicitly stated that the underlying tort to support a civil conspiracy or an aiding and abetting claim must be an intentional tort, Texas courts have found that the underlying tort for such claims cannot be negligence. See *Triplex Communications v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995) (the "unlawful means" element for civil conspiracy cannot be based on negligence as parties cannot conspire to be negligent"). In addition, the Fifth Circuit, looking at Texas law, has found that one cannot conspire to be negligent. See *Marlin v. Moody Nat'l Bank, N.A.*, 248 Fed. Appx. 534, 540 (5th Cir. 2007). Therefore, it should be held that the underlying tort supporting a claim for civil conspiracy or aiding and abetting must be an intentional tort.

Based on the above, as the Receiver has failed to plead fraud with particularity, then the Receiver's claims for civil conspiracy and aiding and abetting must necessarily fail as such claims cannot be premised on a claim of negligence. The claims of civil conspiracy and aiding and abetting, therefore, must be dismissed.

3.    **The equitable doctrine of *in pari delicto* precludes the Receiver from asserting any claims against the R&M Parties.**

Notwithstanding the above, the Receiver's claims against the R&M Parties are barred based on the equitable doctrine of *in pari delicto*. The *in pari delicto* doctrine "applies where [i] the plaintiff is equally or more culpable than the defendant or [ii] acts with the same or greater knowledge as to the illegality or wrongfulness of the transaction." *Latham v. Johnson*, 2018 WL 3121362, at *10 (Miss. Ct. App. June 26, 2018). In other words, as the Receiver stands in the shoes of Adams/Madison Timber, the Receiver cannot sue to recover damages when the Receiver (i.e. Adams/Madison Timber) are equally or more culpable for the alleged wrongdoing as the R&M Parties. The R&M Parties deny any wrongdoing on their part, but, nonetheless, Adams/Madison Timber are without doubt more culpable for the wrongdoing perpetrated by them. Therefore, the doctrine of *in pari delicto* bars the Receiver's claims

22

against the R&M Parties.

It is anticipated that the Receiver will argue that the *in pari delicto* doctrine does not apply to bar the claims in this case, because the Receiver is pursuing claims to fulfill the Receivership's purpose of maximizing the Receivership Estate for the benefit of the innocent investors in Madison Timber. It is also anticipated that the Receiver will argue that she is acting for the benefit of these innocent investors, who did not participate in the alleged wrongdoing, the doctrine of *in pari delicto* would presumably not apply. The Receiver would be correct in arguing that courts, including the Fifth Circuit, have found that *in pari delicto* would not preclude certain claims by the Receiver. The Receiver, however, would be incorrect in arguing that those cases are analogous to this case.

The courts that have recognized the exception to the *in pari delicto* doctrine to permit the Receiver to pursue certain claims have done so in the context of fraudulent transfers. The Fifth Circuit and District Courts within the Fifth Circuit have relied on *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995) to support the proposition that a receiver may pursue certain claims on behalf of the Receivership Estate without being precluded by the doctrine of *in pari delicto*. The Receiver, however, cannot pursue any and all claims. The Fifth Circuit has stated that

> The rationale of *Scholes*, which allows a federal equity receiver to assert the claims of a receivership entity against third-party recipients of the entity's assets that have been fraudulently transferred by the principal of the Ponzi scheme has been endorsed by this court and several other federal courts of appeals as well as a large number of district courts.

*Janvey v. Democratic Senatorial Campaign Committee, Inc.*, 712 F.3d 185, 194 (5th Cir. 2013). "But [t]he Court recognizes that *Scholes* is not universally accepted, especially outside the fraudulent transfer context." *Janvey v. Adams & Reese, LLP*, 2013 WL 12320921 *3 (N.D. Texas September 11, 2013). "In fact, the Seventh Circuit retreated from the *Scholes* court's *in pari delicto* analysis in *Knauer v. Jonathon Roberts Financial Group*. See 348 F.3d 230 (7th Cir. 2003)." *Id.* (The Seventh Circuit found that *in pari delicto* did

bar claims brought by the receiver alleging violations of state and federal law other than fraudulent transfer claims).

Here, there is no alleged fraudulent transfer from Adams/Madison Timber to the R&M Parties. The Receiver cannot institute claims against the R&M Parties to recover assets for the Receivership Estate, because the R&M Parties are not alleged to have been and never have been in possession of assets that the Receiver could recover on behalf of investors. The Receiver has not alleged and the R&M Parties have not received any fees from the alleged notarizations of any fraudulent timber deeds nor has it been alleged nor did they receive any other type of benefit from Adams/Madison Timber in connection with the Ponzi scheme. Instead, the Receiver seeks damages, not assets, based on the alleged tort liability of third parties. The Receiver, therefore, should not be able to argue that *in pari delicto* would not apply in this case to bar the Receiver from asserting tort claims against the R&M Parties.

It is also anticipated that the Receiver may argue that *in pari delicto* would not apply to the Receiver's claims as the Receiver stands in the shoes of Madison Timber, which is separate from the bad actor, Adams. "The receiver 'has a duty to pursue a corporation's claims . . . The receiver thus acts on behalf of the corporation as a whole, an entity separate from its individual bad actors." *Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 966 (5th Cir. 2012) (internal citations omitted). This reasoning would not apply here as the entity of Madison Timber is not distinct from Adams, individually. Adams, as the sole member of Madison Timber, has without a doubt used Madison Timber in a manner that would defeat any claim that Madison Timber is a separate entity from Adams to insulate it from the application of *in pari delicto*. See *Restaurant of Hattiesburg, LLC v. Hotel & Restaurant Supply, Inc.*, 84 So. 3d 32, 39 (¶22) (Miss. Ct. App. 2012) (corporate formalities of limited liability companies may be disregard when there is "(a) some frustration of contractual expectations, (b) flagrant disregard of LLC formalities by the LLC members, and (c) fraud or misfeasance by the LLC member.") In this case, the entity, under the

sole control of Adams, was the bad actor and cannot be held separate from the bad acts of Adams.

For the above stated reasons, the equitable doctrine of *in pari delicto* should apply to preclude the Receiver from asserting her claims as stated in the Amended Complaint against the R&M Parties, and the Amended Complaint should be dismissed with prejudice.

## IV. CONCLUSION

For these reasons, the Motion to Dismiss the Amended Complaint should be granted, and the Amended Complaint as to the R&M Parties should be dismissed.

Respectfully submitted, this the 8th day of August, 2019.

**RAWLINGS & MACINNIS, P.A., TAMMY VINSON AND JEANNIE CHISHOLM**

By: */s/ G. Todd Burwell*

OF COUNSEL:

G. Todd Burwell (MSB #8832)
tburwell@gtbpa.com
Emily K. Lindsay (MSB #104963)
elindsay@gtbpa.com
G. TODD BURWELL, P.A.
618 Crescent Blvd., Suite 200
Ridgeland, MS  39157
Tel:     601-427-4470
Fax:     601-427-0189

## CERTIFICATE OF SERVICE

I, G. Todd Burwell, one of the attorneys for Defendants Rawlings & MacInnis, P.A., Tammy Vinson and Jeannie Chisholm, do hereby certify that on this the 8th day of August, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. I certify that I have this day forwarded via the ECF system, a true and correct copy of the foregoing to all counsel of record who have registered with that system in this case.

*/s/ G. Todd Burwell*