UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| ALYSSON MILLS, IN HER CAPACITY AS RECEIVER FOR ARTHUR LAMAR ADAMS AND MADISON TIMBER PROPERTIES, LLC, | Case No. 3:19-cv-364-CWR-FKB |
| | Arising out of Case No. 3:18-cv-252, *Securities and Exchange Commission v. Arthur Lamar Adams and Madison Timber Properties, LLC* |
| Plaintiffs, | |
| v. | Hon. Carlton W Reeves, District Judge |
| THE UPS STORE, INC.; HERRING VENTURES, LLC d/b/a/ THE UPS STORE; AUSTIN ELSEN; TAMMIE ELSEN; COURTNEY HERRING; DIANE LOFTON; CHANDLER WESTOVER; RAWLINGS & MACINNIS, PA; TAMMY VINSON; and JEANNIE CHISHOLM, | |
| Defendants. | |

**THE UPS STORE, INC.'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendant The UPS Store, Inc. ("TUPSS, Inc.") submits this Memorandum of Law in support of its Motion to Dismiss the Amended Complaint filed by Plaintiff Alysson Mills as the Receiver for the estates of Arthur Lamar Adams and his companies ("Plaintiff" or the "Receiver") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

The Receiver has reached too far by naming TUPSS, Inc. as a Defendant in this action, which seeks to recoup the sums Arthur Lamar Adams stole in his Ponzi scheme.  TUPSS, Inc., a subsidiary of United Parcel Service, Inc. ("UPS"), is merely the franchisor of independently owned businesses called The UPS Store, like the one owned and operated by Defendant Herring Ventures.  Even accepting the truth of the Receiver's allegations that several employees of Herring Ventures negligently performed their duties as notaries public, TUPSS, Inc. is not liable for their negligence as a matter of Mississippi law because, as the Receiver's Amended Complaint confirms, it is Herring Ventures, not TUPSS, Inc. that employed those notaries public.

The Receiver's Amended Complaint names nine other Defendants: (1) five individuals who are notaries employed by Herring Ventures, (2) Herring Ventures, an independent business authorized under a written franchise agreement with TUPSS, Inc. to operate a The UPS Store, (3) the law firm of Rawlings & MacInnis, and (4) two employees of Rawlings & MacInnis who were notaries public.  The Receiver alleges that those seven notaries were negligent or reckless in the performance of their quasi-official jobs as notaries public because they allegedly notarized documents that were not completely filled out.  The Receiver seeks to hold Herring Ventures and Rawlings &MacInnis vicariously liable for the negligence of their notary employees, and directly liable for the negligent retention and supervision of those notaries.

TUPSS, Inc.'s alleged connection to Adam's Ponzi scheme is remote—too remote.  The Receiver seeks to hold TUPSS, Inc. vicariously liable for the alleged negligence of the notaries.

1

Under Mississippi law, a franchisor can be held liable for the actions of one of its franchisee's employees only if the franchisor has the power to "hire or fire [the franchisee's] employees, to direct the hours the employees worked, or to direct the details of the manner in which the day-to-day work of each employee was completed."  *See Parmenter v. J&B Enters.*, 99 So. 3d 207, 215 (Miss. Ct. App. 2012).  The Receiver does not and cannot allege that TUPSS, Inc. hires or fires Herring Venture's employees, determines their hours, or directed the details of their work.  The Receiver's conclusory allegation that TUPSS, Inc. had "control" over its franchisees cannot save the Amended Complaint from dismissal.  It is well settled that such formulaic, fact-deficient allegations fall far short of the pleading requirements in federal court.

Although it is reasonably clear that the Receiver is asserting liability against TUPSS, Inc. only on a *respondeat superior* theory, three claims for relief are confusingly stated against all ten "Defendants."  The civil conspiracy (Count I) and aiding and abetting (Count II) claims must be dismissed because (1) neither is a standalone cause of action under Mississippi law, (2) one cannot "conspire" to be negligent as a matter of law, and (3) the Receiver does not allege that TUPSS, Inc. had any knowledge of any "conspiracy," much less joined it.  The "negligence" (Count III) claim should be dismissed against TUPSS, Inc. because there is no allegation that TUPSS, Inc. was itself negligent in any way.

Accordingly, the Amended Complaint should be dismissed in its entirety as to TUPSS, Inc.

## BACKGROUND

### A.     The Relevant Parties and Non-parties

#### 1.     *Arthur Lamar Adams' Ponzi Scheme and Madison Timber*

Non-Party Arthur Lamar Adams is the key actor in this saga.  Adams pleaded guilty to federal wire fraud charges for a Ponzi scheme that began in 2004 and spanned a decade.  His

victims allegedly lost more than $85 million.  On October 30, 2018 Adams was sentenced by this Court to almost twenty years in prison.  (Am. Compl. ¶¶ 16-28.)  Adams owned Madison Timber Fund, LLC, Madison Timber, LLC, and Madison Timber Properties, LLC ("Madison Timber").  (*See* Criminal Information ¶¶ 2-4, *U.S. v. Adams*, No. 3:18-cr-00088-CWR-LRA (S.D. Miss. May 1, 2018), ECF No. 1.)

Adams "fraudulently represented to investors that Madison Timber [] was in the business of buying timber rights from landowners and then selling the timber rights to lumber mills at a higher price." (*Id*. ¶ 6.)  In truth, no such timber rights existed.  (*Id*.)  Adams sold these fictitious timber rights to investors, entering into promissory notes that "typically guaranteed investors an interest rate of 12 to 13 percent, which was to be repaid to investors over the course of twelve to thirteen months." (*Id*. ¶ 7.)  In order to attract investors, Adams also used "recruiters" who referred investors to Adams.  (*Id*. ¶ 11.)  Adams used the investors' money for his own benefit, to pay his recruiters, and to pay other investors their promised interest payments.  (*Id*. ¶¶ 8, 10.)

The criminal complaint alleges that Adams "created false timber deeds purporting to be contracts conveying timber rights from landowners to Madison Timber" and that he "forged the signatures of landowners, whose names were obtained from timber maps." (*Id*. ¶ 9.)  Adams "had many of the documents notarized to make the investments appear legitimate." (*Id*.)  The government did not allege that any of the notaries public who allegedly notarized documents for Adams had any knowledge of Adams' scheme or that they were co-conspirators.  (*Id*.)  Indeed, contrary to the Receiver's allegations, the government's bill of information did not include any allegations against the notaries public at all—let alone against TUPSS.  (*Compare id. with* Am. Compl. ¶ 27.)  The only other pending criminal action was filed against one of the recruiters to

whom Adams paid millions of dollars.  (*See U.S. v. McHenry*, No. 3:19-cr-00020-CWR-LRA (S.D. Miss.).)  No criminal charges have been filed against any such notaries.

The United States Securities and Exchange Commission (SEC) also filed a civil action against Adams and Madison Timber asserting claims under the antifraud provisions of the federal securities laws, Section 17(a) of the Securities Act of 1933, Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5.  (*See SEC v. Adams*, No. 3:18-cv-0252-CWR-FKB (S.D. Miss.).)  The SEC has not sued any of the notaries public who allegedly notarized documents for Adams or alleged they were parties to Adam's criminal scheme.  Contrary to the Receiver's allegations, the SEC complaint did not include any allegations against the notaries public at all—let alone against TUPSS.  (*Compare id. with* Am. Compl. ¶ 27.)

### 2. The Court-Appointed Receiver

On June 22, 2018, the Court appointed Alysson Mills as the Receiver for the estates of Adams and Madison Timber at the request of the SEC.  (*See* Am. Compl. ¶ 5.)  For nearly a year, the Receiver has pursued a civil action seeking to recover money from several of the recruiters who were paid "millions of dollars" by Adams.  (*See Mills v. Billings*, No. 3:18-cv-679 (S.D. Miss.).)  The Receiver has also filed actions against several law firms and financial institutions who purportedly "lent their influence, their professional expertise, and even their clients to Adams and Madison Timber."  (*See Mills v. Butler Snow*, No. 3:18-cv-866 (S.D. Miss.); *Mills v. BankPlus*, No. 3:19-cv-196 (S.D. Miss.).)

### 3. Herring Ventures and the Herring Notaries

Long after Adams was charged with criminal fraud, surrendered to the authorities, and pleaded guilty, the Receiver commenced this action seeking to recover more than $85 million from seven individuals authorized by the State of Mississippi to notarize documents, their employers, and TUPSS, Inc., a franchisor of The UPS Store.

4

Herring Ventures, LLC is a limited liability company that has a franchise agreement with TUPSS, Inc. to operate as a The UPS Store franchisee in Madison, Mississippi.  (Am. Compl. ¶¶ 7, 53, 58.)[1]  The Receiver alleges that Herring Ventures "employed persons . . . to provide business services, including notary services, to customers[.]"  (*Id.* ¶ 60.)

The Amended Complaint names as defendants five employees of Herring Ventures ("the Herring Notaries") who have commissions from the State of Mississippi to serve as notaries public.  (*See, e.g.*, *Id.* ¶¶ 60-61, 113-115.)  In Mississippi, a notary public is "commissioned to perform official acts under the laws of this state."  1 Miss. Admin. Code Pt. 5, R 1.14; *see also* Miss. Code §25-33-1 *et seq.*  To become a notary public, individuals must be a resident of Mississippi for more than 30 days, file an application with the Secretary of State, pay a $25 application fee, file a $5,000 Surety Bond and Oath of Office with the Secretary of State, obtain an official seal or stamp to affix to documents, and comply with Mississippi notary laws and regulations.  *See* 1 Miss. Admin. Code Pt. 5, R. 2.1, 2.2, 4.2.

The Receiver alleges that the Herring Notaries "provided notary services to Adams in the course and scope of their employment."  (Am. Compl. ¶ 61.)  The Receiver alleges the Herring Notaries "knew or should have known" that the timber deeds that Adams paid to have notarized were fake.  (*Id.* ¶¶ 63-64.)  The Receiver asserts that these notaries public were negligent because they notarized these timber deeds although the "grantors" had not "personally appeared" before them.  (*Id.* ¶¶ 63-66.)

---

[1]  In an attempt to obfuscate, the Receiver defines Herring Ventures and TUPSS, Inc. as "UPS." As stated, Herring Ventures is a franchisee that has a contract with TUPSS, Inc. that allows Herring Ventures to use The UPS Store® trademark.  Herring Ventures is not a subsidiary, or owned by UPS or TUPSS, Inc., nor does the Receiver so allege.

The Receiver does not assert any causes of action against Herring Ventures, the Herring Notaries, or any other Defendant in this action on the theory that they were knowing participants in Adams's Ponzi scheme; that is, there are no causes of action against Herring Ventures or the Herring Notaries for fraud.  Nor does the Receiver allege that Herring Ventures or the Herring Notaries received any payments related to or from the proceeds Adams obtained in running his Ponzi scheme (other than standard notary fees paid to Herring Ventures).  Although the Amended Complaint refers to "conspiracy" and "aiding and abetting," the only underlying tort claim against the notaries is for "recklessness, gross negligence, and at a minimum negligence" based on the Herring Notaries' alleged failure properly to notarize the timber deeds.  (*Id.* ¶¶ 99-110.)

### 4. TUPSS, Inc.

TUPSS, Inc. is the corporate franchisor of Herring Ventures.  (*See id.* ¶ 58.)  MS Code § 75-24-51 (2013) defines a "Franchise" as "a written arrangement for a definite or indefinite period, in which a person for a consideration grants to another person a license to use a trade name, trademark, service mark, or related characteristic, and in which there is a community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement or otherwise."

The Receiver admits, as she must, that the Herring Notaries are employed by Herring Ventures, ***not*** by TUPSS, Inc.  (*Id.* ¶ 60 (alleging that Herring Ventures "employed persons . . . to provide . . . notary services"); ¶¶ 113-115 (alleging that Herring Ventures "knew or should have known that ***their employees***" violated Mississippi notary law (emphasis added)).)  Although the Amended Complaint alleges the conclusion that TUPSS, Inc. "controls every aspect of its stores' business, including their provision of notary services" (*Id.* ¶ 122), there are no factual allegations in the Amended Complaint to support that conclusion.  Rather, the Receiver alleges

6

only that TUPSS, Inc. "specifically advertises that its stores nationwide offer notary services" and that "'[n]otary services' are among [TUPSS, Inc.'s] most advertised business services." (*Id.* ¶¶ 57, 122.)

### 5. Rawlings & MacInnis, PA and Its Notary Employees

On June 13, 2019, the Receiver amended the Complaint to name as Defendants the law firm Rawlings & MacInnis, PA ("Rawlings") and two of the firm's employees who are licensed by Mississippi as notaries public (the "Rawlings Notaries"). (Am. Compl. ¶¶ 13-15, 67-68.) The Receiver does not allege that Rawlings or the Rawlings Notaries had any communications or contact with Herring Ventures, the Herring Notaries, or TUPSS, Inc. (*See id.* ¶¶ 69-75.) There are no allegations that TUPSS, Inc., Herring Ventures, or the Herring Notaries knew anything about Rawlings or the Rawlings Notaries. (*Id.*) But the Receiver nevertheless lumps Rawlings and Rawlings Notaries together with Herring Ventures, the Herring Notaries and TUPSS, Inc. as the "Defendants."

### B. The Receiver's Claims for Relief and Theory of Liability Against TUPSS, Inc.

The Receiver's Amended Complaint asserts four claims for relief, three of which purport to be against "All Defendants." Those three claims are for (1) Civil Conspiracy, (2) Aiding and Abetting, and (3) "Recklessness, Gross Negligence and at a Minimum Negligence." (*Id.* ¶¶ 76-110.) Count IV for "Negligent Retention and Supervision" is against Herring Ventures and Rawlings & MacInnis—which confirms that the Receiver well knows that it is Herring Ventures, and not TUPSS, Inc., that hired and supervised the notaries. (*Id.* ¶¶ 111-121.)

Regarding the three claims that lump TUPSS, Inc. in with all the other Defendants, the Receiver does not include a single allegation referring to TUPSS, Inc. Instead, every allegation concerns "Defendants"—as if TUPSS, Inc., Herring Ventures, five notaries public employed by

Herring Ventures, an independent law firm, and two notaries employed at that law firm were all one unified entity. The Receiver's imprecise use of the word "Defendants" is patently incorrect. For example, although the Receiver alleges that "Defendants knew their attestations were false (Am. Comp. ¶ 183), TUPPS, Inc. obviously did not make any "attestations" on the timber deeds. As explained below, that type of group pleading is impermissible under federal law. *See, e.g.*, *Smith v. Antler Insanity, LLC*, 58 F. Supp. 3d 716, 722 (S.D. Miss. 2014); *Rankin v. Shelter Ins.*, No. 5:18-cv-25(DCB)(MTP), 2018 U.S. Dist. LEXIS 149817, at *4-5 (S.D. Miss. Sept. 4, 2018).

Despite the Receiver's imprecise and incorrect use of the word "Defendants," the Receiver clarifies her theory of liability against TUPSS, Inc. elsewhere in her Amended Complaint. The Amended Complaint alleges:

> Defendant The UPS Store, Inc. is liable for the acts of [Herring Ventures] and the [Herring Notaries] because Defendant The UPS Store, Inc. controls every aspect of its stores' business, including their provision of notary services. The UPS Store, Inc. dictates the location and designs of its stores, the services they offer, the merchandise they sell, the manner in which they conduct their business, and the signage they may use. The UPS Store, Inc. holds itself out to the public as the entity the public does business with. Relevant here, The UPS Store, Inc. specifically advertises that its stores nationwide offer notary services "to make life easier."

> The Receiver is entitled to a declaratory judgment holding, *inter alia,* that Defendant The UPS Store, Inc. is liable for payment of all damages or other relief awarded in favor of the Receiver and against [Herring Ventures] and [the Herring Notaries].

(Am. Compl. ¶¶ 122-123.)

As TUPSS, Inc. will show below, the Receiver's conclusory allegation that TUPSS, Inc. "controls every aspect of its stores' business" is an attempt—unsuccessfully—to allege facts sufficient to state a claim against TUPSS, Inc. on a *respondeat superior* theory for the alleged misconduct of notaries public employed by Herring Ventures.

## LEGAL STANDARD

"To survive a motion to dismiss pursuant to Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *Mangal v. City of Pascagoula*, No. 1:19CV232-LG-RHW, 2019 U.S. Dist. LEXIS 125537, at *4 (S.D. Miss. July 29, 2019) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (citing *Iqbal*, 556 U.S. at 678). "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

Although the Court must accept all "well-pleaded" facts in the complaint as true, "the complaint must allege more than labels and conclusions, a formulaic recitation of the elements of a cause of action will not do, and factual allegations must be enough to raise a right to relief above the speculative level." *Mangal*, 2019 U.S. Dist. LEXIS 125537, at **4-5 (citing *Jebaco Inc. v. Harrah's Operating Co. Inc.*, 587 F.3d 314, 318 (5th Cir. 2009)). "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. As discussed, *infra* at I., the Receiver's allegation that TUPSS, Inc. is liable for any negligence by the Herring Notaries because TUPSS, Inc. allegedly "controls" Herring Ventures is precisely the sort of conclusory allegation not entitled to weight unless supported by factual allegation, establishing the sort of "control" that would make TUPSS, Inc. the *de facto* employer of the notaries.

## ARGUMENT

### I.   TUPSS IS NOT VICARIOUSLY LIABLE FOR THE ALLEGED CONDUCT OF THE NOTARIES PUBLIC EMPLOYED BY HERRING VENTURES

TUPSS, Inc. cannot be liable for the alleged recklessness or negligence of the notaries public employed by Herring Ventures.

The leading case in Mississippi on franchisor liability is *Parmenter v. J&B Enterprises*, 99 So. 3d 207 (Miss. Ct. App. 2012).  Parmenter was a customer of a McDonald's restaurant franchisee, defendant J&B Enterprises, which operated a McDonald's restaurant.  When Parmenter complained about how long it was taking for his order, one of J&B Enterprises' employees, Ms. Jones, beat him with a spatula.  Parmenter sued Jones' employer (franchisee J&B Enterprises) and also McDonald's Corporation, the franchisor.  The Court ruled that McDonald's Corporation could not be liable for the torts of the franchisee's employee unless McDonald's itself was Jones' employer.  *Id.* at 213 ("we must first determine whether McDonald's was in fact an 'employer' or acting as a master of another party.").  And the Court found that McDonald's Corporation was not Jones' employer because McDonald's Corporation did not have the right to "hire or fire employees, to direct the hours the employees worked, or to direct the details of the manner in which the day-to-day work of each employee was completed." *Id.* at 215.

Here, the Receiver admits that Herring Ventures was the employer of the notaries public who notarized timber deeds, and that TUPSS, Inc. was not the employer.  (Am. Compl. ¶ 60.) Importantly, the Receiver does not name TUPPS in the claim regarding the hiring and supervision of the notaries public; instead she names only Herring Ventures.  (*Id.* ¶¶ 111-23.) Thus, there are no facts pleaded in the Amended Complaint that, even if true, could support a finding of liability against TUPSS, Inc. under *Parmenter*.

Unable to allege the pertinent factors laid out in *Parmenter*, the Receiver alleges that TUPSS, Inc. "controls every aspect of its stores' business, including their provision of notary services" and "dictates the location and designs of its stores, the signage they may use, the merchandise they sell, the services they offer, and the manner in which they conduct their business."  (*Id*. ¶ 55.)  The Receiver also further alleges that the Herring Notaries "provided notary services in furtherance of [TUPSS, Inc.'s] . . . business."  (*Id*. ¶ 61.)  And the Receiver claims that TUPSS, Inc. "holds itself out to the public as the entity the public does business with."  (*Id*. ¶ 122.)  These allegations are insufficient to make TUPSS, Inc. liable for misconduct by any of the Herring Notaries employed by Herring Ventures.

The allegations that TUPSS, Inc. "controls every aspect of its stores" and "controls . . . its stores' . . . provision of notary services" (Am. Compl. ¶ 110) are legal conclusions not entitled to the presumption of truth.  *See, e.g.*, *Deal v. Dep't of Corr.*, No. 16-61-JJB-RLB, 2016 U.S. Dist. LEXIS 83687, at *7 (M.D. La. June 28, 2016) ("plaintiff only makes conclusory allegations regarding the alleged policies, practices, and customs of the [defendant], as well as the hiring, training, control, supervision, and discipline of correction officers and other personnel  . . . These legal conclusions are insufficient to state a claim upon which relief may be granted" (citing *Iqbal*, 556 U.S. at 678)); *Mangal*, 2019 U.S. Dist. LEXIS 125537, at *4 ("the complaint must allege more than labels and conclusions" (citing *Jebaco*, 587 F.3d at 318)); *see also Henneberry v. Sumitomo Corp. of Am.*, No. 04 Civ.2128(PKL), 2005 U.S. Dist. LEXIS 8023, at *8-9 (S.D.N.Y. May 3, 2005) (granting motion to dismiss because "the [c]omplaint only makes the conclusory statements that [defendant corporations] . . . exercised direction and control over [subsidiary].  Mere conclusory statements alleging the exercise of such control are insufficient to survive a motion to dismiss."); *First Capital Asset Mgmt. v. Brickellbush, Inc.*, 218 F. Supp. 2d

11

369, 394-395 (S.D.N.Y. 2002) (plaintiff failed to make a prima facie showing of defendant's "direction or control" of alleged co-conspirator's torts where complaint, "in the most conclusory of terms," alleges that defendant "dominates and controls"), *aff'd by First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004); *Bastida v. Nat'l Holdings Corp.*, No. C16-388RSL, 2016 U.S. Dist. LEXIS 107924, at *7 (W.D. Wash. Aug. 4, 2016) (granting motion to dismiss where plaintiffs' complaint "fail[ed] to plead sufficient facts" to establish defendant's *respondeat superior* liability over a wholly owned subsidiary, NSC, and its employee, Gillis, because "[i]t merely alleges that defendant directly or indirectly 'controlled' NSC and Gillis, and that Gillis was an employee of defendant and acted on their behalf," reasoning that "[w]ithout additional facts, these allegations . . . fail to establish an agency relationship between defendant and [NSC and Gillis]").

The Receiver's more specific factual allegations are insufficient to establish TUPPS, Inc.'s vicarious liability for the alleged negligent notarizations by the Herring Notaries. The Receiver does not, and cannot, allege that TUPPS, Inc. somehow exercised control over the manner in which the Herring Notaries notarized timber deeds that caused the harm. *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 975 F. Supp. 2d 392, 408 (S.D.N.Y. 2013) ("under any body of law, to impose vicarious liability against a franchisor, a plaintiff must allege the existence of a franchise agreement, which grants the franchisor meaningful control over the franchisee's day-to-day activities, ***and which control the franchisor exercised with respect to the conduct or injury at issue***" (emphasis added)). The Receiver alleges that TUPSS, Inc. "dictates the location and designs of its stores, the signage they may use, the merchandise they sell, the services they offer, and the manner in which they conduct their business" fares no better. (Am. Compl. ¶ 52); *see, e.g.*, *Deal*, 2016 U.S. Dist. LEXIS 83687, at *7. Even if these facts

were true, they have nothing to do with alleged negligent notarizations performed by the Herring Notaries.  Even if TUPSS, Inc. dictated the location and design of each franchisee's store (TUPSS, Inc. does not), it would be legally irrelevant since the negligent notarization were not related to the store location or design.  The allegation that the TUPSS, Inc. franchisee agreements address signage, and what goods or services are offered, is legally irrelevant because those were not the cause of notaries allegedly failing to comply with their duties under Mississippi law.  As *Parmenter* indicates, the relevant "control" would be if TUPSS, Inc. hired the notaries, determined their hours, and dictated the manner in which they conducted their business.  The Receiver alleges no such facts.

Similarly deficient is the Receiver's formulaic, fact-deficient allegation that the Herring Notaries "provided notary services in furtherance of [TUPSS, Inc.'s] business."  (Am. Compl. ¶ 112); *see, e.g.*, *Scott v. Am. Nat'l Trust & Inv. Mgmt. Co.*, No. 5:12-CV-006-C, 2013 U.S. Dist. LEXIS 194762, at *8 (N.D. Tex. Jan. 15, 2013) (motion to dismiss granted where plaintiff's "conclusory statements" that law firm partner was acting in the course and scope of his employment with law firm "do not suffice to confer vicarious liability"); *Lowe v. Burlington Stores, Inc.*, No. 3:16-CV-03068-B (BF), 2017 U.S. Dist. LEXIS 46704, at *15-16 (N.D. Tex. Mar. 7, 2017) (recommending dismissal because "Plaintiff's conclusory statements that Defendant's employees were acting in the course and scope of its authority are not sufficient to confer vicarious liability").  The allegation that the notaries were acting in the course of their employment would be relevant only if they were employees of TUPPS, Inc.—which they are not.

The Receiver's conclusory allegation that TUPSS "controls every aspect of" Herring Ventures' business should be rejected for the further reason that is patently implausible.  *Lee v.*

*Verizon Communs., Inc.*, 837 F.3d 523, 542 (5th Cir. 2016) (affirming district court decision to dismiss claim that was "rendered implausible in light of other allegations" in the complaint). The Receiver's cause of action against Herring Ventures, and not TUPSS, Inc., for "negligent retention and supervision" (*see* Am. Compl. ¶¶ 112-113) concedes that Herring Ventures retained and supervised its employees.  No franchisor (whether TUPSS, Inc., McDonald's, Subway, Marriott Hotels, etc.) controls "every aspect" of every franchise location.  For example, McDonald's does not and cannot control how each employee at each franchisee's location treats each customer who voices a complaint, just as TUPSS, Inc. cannot and does not control "every aspect" of how a franchisee's employees function throughout the day.

*Parmenter* is instructive here, too.  In *Parmenter*, the customer argued McDonald's Corporation should be held vicariously liable because McDonald's determined the franchisee's signage and employee uniforms, and because customers were attracted to the franchise locations due to its reputation for good food.  The Court rejected the argument that those factors constituted the "control" necessary to render McDonald's Corporation vicariously liable.

*Parmenter* shows that it is the general rule in Mississippi (as it is elsewhere) that a franchisor is ***not*** liable for misconduct of a franchisee's employees.  If the Receiver's vague and irrelevant allegations were sufficient to create an exception to that rule here, that exception would swallow the rule, and franchisors would become vicariously liable as a matter of course. That is not the law in Mississippi.

## II.   PLAINTIFF HAS FAILED TO STATE ANY CAUSES OF ACTION DIRECTLY AGAINST TUPSS, INC.

Given the Receiver's focus on TUPSS, Inc.'s alleged "control" over Herrings Ventures' notary employees, it seems clear that her basis for TUPSS, Inc.'s alleged liability is ***only*** on a *respondeat superior* theory.  As discussed above, this argument fails.  In an abundance of

caution, however, TUPSS, Inc. addresses the claims liable for conspiracy, aiding and abetting, or negligence fails as well, which are purportedly stated against "All Defendants."

### A.    The Receiver's Group Pleading Referring to "Defendants" Is Improper

As a threshold matter, although Counts I, II, and III purport to be stated against "All Defendants," there is not a single reference to TUPPS, Inc. in those counts.  Under federal law, group pleading like that is improper.  *See, e.g.*, *Smith v. Antler Insanity, LLC*, 58 F. Supp. 3d 716, 722 (S.D. Miss. 2014) (granting motion to dismiss because plaintiff "has alleged no facts that support the individual defendants' involvement in his tort claims" where he alleges "'nothing in the First Amended Complaint that ascribes specific conduct or statements to [the individual defendants] . . . [I]t is not enough to simply rest on the use of the collective term, 'Defendants,' in the allegations.'" (citation omitted)); *Rankin v. Shelter Ins.*, No. 5:18-cv-25(DCB)(MTP), 2018 U.S. Dist. LEXIS 149817, at *4-5 (S.D. Miss. Sept. 4, 2018) ("[plaintiff] cannot rely on collective allegations of wrongdoing . . . . [plaintiff's] Complaint does not distinguish claims against [one defendant] from claims against [another]. It makes conclusory assertions that [one defendant] is somehow liable to [plaintiff] for the same reasons that [another defendant] is allegedly liable to [plaintiff].  As with the improper collective allegations against all defendants generally, conclusory assertions that [one defendant] is somehow liable to [plaintiff] on the same basis as [another defendant] are also insufficient.").

The Receiver's Counts I-III should be dismissed against TUPPS, Inc. because there are no allegations about TUPPS, Inc. specifically, and the vague references to "Defendants" are insufficient.

**B.**     **Counts I and II Should Be Dismissed**

    **1.**     **Civil Conspiracy and Aiding and Abetting Are Not Standalone Claims Under Mississippi Law**

Assuming the Receiver seeks to hold TUPPS, Inc. liable for conspiracy (Count I) or aiding and abetting (Count II), these claims should be dismissed because conspiracy and aiding and abetting are not standalone causes of action under Mississippi law, and the Receiver has failed to assert any underlying tort claim against any of the Defendants in this case that could support such claims. *Langston v. 3M Co.*, No. 2:12cv163-KS-MTP, 2013 U.S. Dist. LEXIS 74639, at *9 (S.D. Miss. May 28, 2013) ("[A] civil conspiracy claim cannot stand alone, but must be based on an underlying tort" (quoting *Aiken v. Rimkus Consulting Grp., Inc.*, 333 F. App'x 806, 812 (5th Cir. 2009)) (per curiam)); *Wells v. Shelter Gen. Ins. Co.*, 217 F. Supp. 2d 744, 755 (S.D. Miss. 2002) (applying Mississippi law; collecting cases: "Plaintiffs argue that a civil conspiracy claim can stand alone, without reference to an underlying tort.  The Court finds no support for such a contention under Mississippi or any other law, however.  Authority to the contrary is, in fact, legion."); *see also Fikes v. Wal-Mart Stores, Inc.*, 813 F. Supp. 2d 815, 822 (N.D. Miss. 2011) (granting motion to dismiss claim for aiding and abetting and civil conspiracy because complaint failed to state a claim for an underlying tort "there must be an underlying tort for the Defendants to have aided and abetted"); *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1346 (S.D. Fla. 2018) (granting motion to dismiss claim for civil conspiracy because "negligence claims cannot serve as the basis for the civil conspiracy claim," and plaintiffs failed to plead sufficient fasts for any other underlying tort).[2]

---

[2] This assumes that aiding and abetting is recognized under Mississippi law in the first place.  *See Fikes*, 813 F. Supp. 2d at 822 ("The Mississippi Supreme Court has never recognized aiding and abetting as a civil cause of action . . .); *Dale v. ALA Acquisitions, Inc.*, 203 F. Supp. 2d 694, 700 (S.D. Miss. 2002) ("[W]hile the Mississippi Supreme Court has not expressly recognized the tort of aiding and abetting fraud, this court predicts that such a claim is viable under Mississippi law.").

Further, TUPPS, Inc. could not be liable for conspiracy to commit negligence because "[n]egligence cannot form the basis for conspiracy liability."  *See, e.g.*, *Corral Grp., LP v. SMIC, Ltd. (In re SMIC, Ltd.)*, Nos. 10-40120-DML-11, 10-04054-DML, 2013 Bankr. LEXIS 3359, at *20 (Bankr. N.D. Tex. Aug. 12, 2013); *Tu Nguyen v. Duy Tu Hoang*, 318 F. Supp. 3d 983, 1019 (S.D. Tex. 2018) ("[T]here cannot be a civil conspiracy to be negligent." (citing *Tri v. J.T.T.*, 162 S.W.3d 552, 557 (Tex. 2005))); *K&F Rest. Holdings, Ltd. v. Rouse*, No. 16-293-JWD-EWD, 2018 U.S. Dist. LEXIS 123154, at *42 (M.D. La. July 24, 2018) ("A conspiracy claim requires more than negligence: it requires either intentional or willful conduct." (citing *Thomas v. N. 40 Land Dev., Inc.*, 894 So. 2d 1160, 1177-78 (La. App. 4 Cir. 2005))); *see also Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 526 (5th Cir. 2016) ("Civil-RICO conspiracy . . . cannot be premised on negligence.").  The civil conspiracy and aiding and abetting claims fail accordingly.

### 2.    TUPSS, Inc. is Not Alleged to Have Known Anything About the Madison Timber Scheme or the Acts of the Herring Notaries

Even if the Receiver has pleaded an underlying tort capable of supporting a claim for civil conspiracy or aiding and abetting—and she has not—there are no facts alleged in the Amended Complaint that, even if true, could support such claims against TUPSS, Inc.

Under Mississippi law, civil conspiracy requires proof of:  "(1) two or more persons or corporations; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result." *Aries Bldg. Sys., LLC v. Pike Cty.*, No. 5:16-cv-16-DCB-MTP, 2017 U.S. Dist. LEXIS 171236, at *7-8 (S.D. Miss. Oct. 17, 2017) (citing *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 459 (5th Cir. 2005)); *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So. 2d 777, 786 (Miss. 2004).  Similarly, under § 876 of the Second Restatement of Torts, "[f]or harm resulting to a

third person from the tortious conduct of another, one is subject to liability if he . . . **knows** that the other's conduct constitutes a breach of duty and **gives substantial assistance or encouragement** to the other so to conduct himself."  Restatement (Second) of Torts § 876, (b) (1979) (emphasis added).

Here, there are no allegations in the Amended Complaint that TUPSS, Inc. knew anything about the Madison Timber scheme at all, let alone anything about what the notaries at the Madison Center were allegedly doing.  Nor are there any allegations that TUPSS, Inc. provided any "assistance or encouragement" in furtherance of the purportedly negligent actions of the Herring Notaries about which TUPSS, Inc. knew absolutely nothing.  There was no "meeting of the minds" between TUPSS, Inc. and any other person or entity, and no allegations that TUPSS, Inc. participated in any conspiracy.  The Receiver's civil conspiracy and aiding and abetting claims against TUPSS, Inc. therefore should be dismissed.  *See, e.g.*, *Dickens v. A-1 Auto Parts & Repair, Inc.*, No. 1:18CV162-LG-RHW, 2018 U.S. Dist. LEXIS 186951, at *11-12 (S.D. Miss. Nov. 1, 2018) (dismissing aiding and abetting claim given that the allegations "fall[] short of stating that [defendant] knew about conduct constituting a conspiracy regarding asbestos, or that it took action to encourage the others to carry out the conspiracy").

### C.     There Are No Allegations That TUPSS, Inc. Acted "Recklessly" or "Negligently"

Count III of the Amended Complaint for "recklessness, gross negligence, or, at a minimum, negligence"[3] fails to state a claim against TUPSS, Inc. because there are no facts alleged that, even if assumed to be true, suggest that TUPSS, Inc. owed any standard of care, let

---

[3] The only cause of action asserted in Count III is for negligence.  *White v. Nelson*, 196 So. 3d 1039, 1049-1050 (Miss. Ct. App. 2016) ("it is well established that 'gross negligence' and 'reckless disregard' are simply higher degrees of negligence").  "Recklessness" and "gross negligence" are not causes of action; they are merely a means to recover punitive damages.  *See, e.g.*, *id.*

alone failed to exercise any such standard of care.  *See, e.g.*, *Palmer v. Anderson Infirmary Benevolent Ass'n*, 656 So. 2d 790, 794 (Miss. 1995) ("For a plaintiff to recover in a negligence action the conventional tort elements of duty, breach of duty, proximate causation and injury must be proven by a preponderance of the evidence.").

The "standard of care" that the Receiver alleges in Count III is based entirely on the obligations that Mississippi law imposes on notaries public, not corporate franchisors whose franchisees may or may not employ notaries public.  (Am. Compl. ¶ 90 ("'[A] notary's performance of any act prohibited, or failure to perform any act mandated' constitutes 'official misconduct,' 'misfeasance,' and 'malfeasance.'" (quoting Rule 1.16)).)  TUPSS, Inc. is obviously not a notary public and there are no allegations that it is.  Thus, the standard of care at the heart of Count III does not, and cannot, apply to TUPSS, Inc.

Further, the Amended Complaint does not allege that TUPPS, Inc. was negligent in any way.  Indeed, the factual allegations in the Amended Complaint are clear that it was the Herring Notaries—and not TUSS, Inc.—that purportedly failed to examine the timber deeds that Adams presented, notarized documents with the signatures of individuals not present, and failed to record the notarizations performed for Adams.  (*Compare* Am. Compl. ¶¶ 65-67 *with* ¶¶ 90-93.)  *See, e.g.*, *Bd. of Comm'rs v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 729 (5th Cir. 2017) ("[Plaintiff] thus has failed to establish that Defendants breached a duty of care to it under the facts alleged, and accordingly the district court properly dismissed the negligence claim.").

### D.    To the Extent that the Receiver's Claims Sound in Fraud, the Receiver Clearly Has Failed to Meet the Pleadings Requirements Under Rule 9(b)

TUPSS, Inc., Inc. does not read the Receiver's Amended Complaint as sounding in fraud although the word "fraud" is sprinkled throughout the Receiver's Complaint.  If, however, the Court reads the Receiver's Complaint as sounding in fraud, then Rule 9(b) applies—in which

case the Receiver's Complaint should be dismissed for failure to plead fraud with particularity. *See* Fed. R. Civ. P. 9(b); *United States ex rel. Hartwig v. Medtronic, Inc.*, No. 3:11cv413, 2014 U.S. Dist. LEXIS 44475, at *44 (S.D. Miss. Mar. 31, 2014) (dismissing complaint to failure to plead fraud with particularity under Fed. R. Civ. 9(b) because the plaintiff "relie[d] upon conclusory assertions about an alleged 'scheme'.").

## III. THE DOCTRINE OF *IN PARI DELICTO* BARS THE RECEIVER FROM ASSERTING ANY CLAIMS AGAINST TUPSS, INC.

In this action, the Receiver stands in the shoes of Adams, the wrongdoer.  The Receiver cannot recover from TUPSS, Inc., due to the doctrine of *in pari delicto*.  *See Latham v. Johnson*, 262 So. 3d 569, 582 (Miss. Ct. App. 2018) (explaining that the *in pari delicto* doctrine "applies where [i] the plaintiff is equally or more culpable than the defendant or [ii] acts with the same or greater knowledge as to the illegality or wrongfulness of the transaction."), *cert. denied* 260 So. 3d 798 (Miss. 2019).

## CONCLUSION

For the reasons set forth above, TUPSS, Inc. respectfully requests that the Court dismiss the Amended Complaint in its entirety with prejudice.

Dated:        August 29, 2019

By: */s/ LaToya C. Merritt*_____
    Reuben V. Anderson, MSB #1587
    LaToya C. Merritt, MSB #100054
    Jessica Terrill Pulliam, MSB #105510
    PHELPS DUNBAR, LLP
    4270 I-55 North Jackson, Mississippi 39211-6391
    Post Office Box 16114
    Jackson, Mississippi 39236-6114
    Telephone: 601-352-2300
    Telecopier: 601-360-9777
    Email: reuben.anderson@phelps.com
          merrittl@phelps.com
          pulliamj@phelps.com


    Mark R. McDonald (CA Bar No. 137001)
    (*pro hac vice pending*)
    MORRISON & FOERSTER LLP
    707 Wilshire Boulevard
    Los Angeles, CA  90017
    Telephone:  213.892.5200
    Facsimile:   213.892.5454
    Email: MMcDonald@mofo.com

    Adam J. Hunt (NY Bar No. 4896213)
    (*pro hac vice pending*)
    MORRISON & FOERSTER LLP
    250 West 55th Street
    New York, New York 10019
    Telephone:  212.468.8000
    Facsimile:   212.468.7900
    Email: AdamHunt@mofo.com

    ***Attorneys for Defendant***
    ***THE UPS STORE, INC.***

## Certificate of Service

I, LaToya C. Merritt, do hereby certify that I electronically filed the above and foregoing

MEMORANDUM OF LAW IN SUPPORT OF THE UPS STORE, INC.'S MOTION TO DISMISS

THE AMENDED COMPLAINT with the Clerk of the Court using the CM/ECF system which sent

notification of such filing to the following counsel of record:

| | |
|---|---|
| Alysson Leigh Mills<br>Kristen D. Amond<br>Brent B. Barriere<br>Jason W. Burge<br>Rebekka C. Veith<br>FISHMAN HAYGOOD, LLP<br>201 St. Charles Avenue, Suite 4600<br>New Orleans, LA 70170-4600<br>(504) 586-5294<br>(504) 586-5250 (fax)<br>amills@fishmanhaygood.com<br>kamond@fishmanhaygood.com<br>bbarriere@fishmanhaygood.com<br>jburge@fishmanhaygood.com<br>rveith@fishmanhaygood.com<br><br>Lilli Evans Bass<br>Brown Bass & Jeter, PLLC<br>P.O. Box 22969<br>Jackson, MS 39225<br>(601) 487-8448<br>(601) 510-9934 (fax)<br>bass@bbjlawyers.com | ***ATTORNEYS FOR PLAINTIFF*** |
| G. Todd Burwell<br>Emily Kincses Lindsay<br>G. TODD BURWELL, PA<br>618 Crescent Blvd., Ste. 200<br>Ridgeland, MS 39157<br>(601) 427-4470<br>(601) 427-0189 (fax)<br>tburwell@gtbpa.com<br>elindsay@gtbpa.com | ***ATTORNEYS FOR RAWLINGS &<br>MACINNIS, PA, JEANNIE CHISOLM, AND<br>TAMMY VINSON*** |

| | |
|---|---|
| William Lee Guice, III<br>RUSHING & GUICE, PLLC – Biloxi<br>P.O. Box 1925<br>Biloxi, MS 39533-1925<br>1000 Government St., Suite E<br>Ocean Springs, MS 39564<br>(228) 374-2313<br>(228) 875-5987<br>bguice@rushingguice.com | ***ATTORNEY FOR HERRING VENTURES,<br>LLC, AUSTIN ELSEN, CHANDLER<br>WESTOVER, COURTNEY HERRING,<br>DIANE LOFTON, AND TAMMIE ELSEN*** |

THIS, the 29th day of August, 2019.


/s/ Latoya C. Merritt_____
LATOYA C. MERRITT