UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| ALYSSON MILLS, IN HER CAPACITY AS RECEIVER FOR ARTHUR LAMAR ADAMS AND MADISON TIMBER PROPERTIES, LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>THE UPS STORE, INC.; HERRING VENTURES, LLC d/b/a/ THE UPS STORE; AUSTIN ELSEN; TAMMIE ELSEN; COURTNEY HERRING; DIANE LOFTON; CHANDLER WESTOVER; RAWLINGS & MACINNIS, PA; TAMMY VINSON; and JEANNIE CHISHOLM,<br><br>        Defendants. | Case No. 3:19-cv-364-CWR-FKB<br><br>Arising out of Case No. 3:18-cv-252, *Securities and Exchange Commission v. Arthur Lamar Adams and Madison Timber Properties, LLC*<br><br>Hon. Carlton W. Reeves, District Judge |

**THE UPS STORE, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

## INTRODUCTION

The UPS Store, Inc. ("TUPSS, Inc.") should be dismissed from this case, now, and not forced to expend time and money defending against the Receiver's overreaching claims. Contrary to the suggestion of the Receiver, the law in Mississippi is clear – as it is in numerous other jurisdictions—that a franchisor cannot be held liable for the misconduct of a franchisee's employees except in the extremely rare situation where the franchisor has the ability to control the day-to-day functions of those employees that caused the harm.  *Parmenter v. J&B Enters.*, 99 So. 3d 207, 215 (Miss. Ct. App. 2012)(dismissing claims against franchisor McDonalds Corporation because it did not have the power to "hire or fire [the franchisee's] employees, to direct the hours the employees worked, or to direct the details of the manner in which the day-to-day work of each employee was completed."); *Allen v. Choice Hotels Int'l*, 942 So. 2d 817, 821-22 (Miss. Ct. App. 2006) (dismissing claims against franchisor Choice Hotels because it did nto have day-to-day control over the security at each Comfort Inn location.).

The Receiver's suggestion that the Mississippi Supreme Court held in *Elder v. Sears Roebuck & Co.*, 516 So. 2d 231 (Miss. 1987) that a franchisor can be vicariously liable for the tort of a franchisee's employees even absent such day-to-day control is flat wrong.  *Elder* does not concern franchisor liability at all; Sears is not a franchisor.  *Allen* found *Elder* inapplicable regarding franchisor liability.  Further, the Mississippi Supreme Court scaled back *Elder* even outside the franchisor liability arena on the very issue upon which the Receiver relies.  Thus, the Fifth Circuit has concluded that *Elder's* suggestion that a corporation can be vicariously liable for an independent contractor's torts based on a theory of apparent authority was effectively overruled a few years later and is not the law in Mississippi. *Mears v. Jones*, 756 F. App'x 404, 416 (5th Cir. 2018).

1

The Receiver's other argument, that it has alleged sufficient facts to suggest that TUPSS, Inc. controlled the Hering Notaries day-to-day activities, is equally wrong. The Receiver does not allege any facts suggesting that TUPSS, Inc. did—or could—control the way franchisee employees performed their notary functions at each The UPS Store franchise location. The Receivers advances the illogical argument that TUPPS, Inc. had control because TUSS, Inc. requires franchisees to offer notary services and advertises those services. But advertising that franchisees offer a service does not show control over how franchisee employees provide those services. The Receiver's allegations about advertising clearly do not distinguish this case from *Parmenter* (McDonald's advertises its restaurants) or *Allen* (the franchisor advertises Comfort Inn hotels.). Dismissal is appropriate at the pleading stage because there are no allegations in the Amended Complaint that, even if true, could support a finding that TUPSS, Inc. controlled, or could possibly control, the day-to-day activities of the Herring Notaries.

In the Opposition, the Receiver devotes one sentence to the idea that TUPPS, Inc. can be directly liable for negligent supervision of its franchisee. (Opp. at 17.) Count IV of the Receiver's Amended Complaint is "For Negligent Retention and Supervision," and it is asserted against *only* The UPS Store Madison [Herring Ventures] and Rawlings & MacInnis. Nor is there a single allegation in the Amended Complaint that TUPPS, Inc. negligently supervised its franchisee. In all events, such a claim fails.

## ARGUMENT

## I. THE RECEIVER'S OPPOSITION CLARIFIES—SOMEWHAT—ITS THEORY OF LIABILITY AGAINST TUPPS, INC.

In a footnote, the Receiver asserts that the Amended Complaint is "reasonably clear that the Receiver does not intend to prove The UPS Store, Inc. itself conspired with and aided and abetted Adams but instead that The UPS Store, Inc. is liable for the acts of The UPS Store

Madison [i.e. Herring Ventures], its franchisee, which is in turn liable for the acts of its employees [i.e. the five Herring Notaries.]"  (Opp. at 3 n.2.)  The Receiver thus characterizes its Amended Complaint as stating "a claim for franchisor liability against UPS [sic.]"  (*Id*. at 20.)

Although the Receiver defends its Amended Complaint as "not 'confusing'" and "reasonably clear," (*id*. at 3 n.2) the Receiver persists with the inaccurate and confusing tactic of using the term "UPS" to sometimes mean TUPSS, Inc. (as in the sentence above); sometimes to mean TUPSS, Inc. and Herring Ventures (*see* Am. Compl. ¶¶ 6-7); and sometimes to mean TUPSS, Inc., Herring Ventures, Austin Elsen, Tammie Elsen, Courtney Herring, Diane Lofton and Chandler Westover (*see* Opp. at 4).  Those five individuals are employees of the Herring Ventures franchisee, and in no way are they "UPS" or UPS employees.  The Receiver and its counsel offer the feeble explanation:  "For ease, as necessary to distinguish The UPS Store, Inc., this brief refers to The UPS Store, Inc. and The UPS Store Madison and its notary-Defendant employees simply as 'UPS'."  (*Id*. at 4.)  It may be "eas[y]" and "simpl[e]" to refer to franchisee Herring Ventures and those five individuals—who are not UPS or TUPSS, Inc. employees—as "UPS" but it is inaccurate and intended to obfuscate.  (*Id*.)

## II.    THE AMENDED COMPLAINT DOES NOT ALLEGE FACTS SUFFICIENT TO ESTABLISH "FRANCHISOR LIABILITY" AGAINST TUPSS, INC.

Although the Receiver concedes the issue here is "franchisor liability," the Receiver chides TUPSS, Inc. for referring to the 2012 decision *Parmenter v. J&B Enters*., 99 So. 3d 207 (Miss Ct. App. 2012) as the "leading case" in Mississippi franchisor liability [while] "neglect[ing] to inform the Court that the Mississippi Supreme Court has spoken on the issue." (Opp. at 21 (citing *Elder*, 516 So. 2d 231).)  The Receiver's Opposition then goes on to purport to quote *Elder,* in which Sears was held liable for a slip and fall at a Sears catalog store on an apparent authority theory because, although Sears did not control the operations of that store, it

3

led customers to believe they were at a Sears store.  But the Receiver's Opposition misleadingly

inserts the words "[its franchisee]" in the quote in lieu of the name of the person who operated a

Sears catalogue store.  (*Id*.)  Anyone reading the Receiver's Opposition would conclude that

*Elder* concerned franchisor liability, and that Sears operated a franchise business and had

franchisees.  But, as this Court will see, *Elder* does not concern franchisor liability at all.  Sears

is not a franchisor, and the owner of the Sears catalog store involved was not a franchisee.  The

words "franchise," "franchisor" or "franchisee" do not appear in *Elder*.  Little wonder that the

*Parmenter* court, which expressly and directly addressed the law on franchisor liability in

Mississippi, did not even see a need to mention *Elder*, which was decided 35 years earlier and in

a context far afield from that of franchisor's liability.

A 2006 decision involving franchisor liability in Mississippi, *Allen v. Choice Hotels Int'l*,

942 So. 2d 817, 821 (Miss. Ct. App. 2006), did, however, briefly address and distinguish *Elder*.

*Allen* found *Elder* inapplicable because there was no claim in *Allen* that Choice Hotels

International was anything other than a franchisor of Comfort Inn hotels whereas Sears, which is

not a franchise business, had allegedly let customers to think the catalog store was a Sears retail

store.[1]  Thus, the *Allen* court ruled that franchisor Choice Hotels could not be liable for the death

of a guest that allegedly resulted from inadequate security at a Comfort Inn, following the view

in other jurisdictions that "have held [a] franchisor vicariously liable ***only when it had the right***

***to control the specific instrumentality or aspect of the business that was alleged to have caused***

***the harm***."  942 So. 2d at 821, 822 (emphasis added) (affirming summary judgment for

---

[1] The Receiver's Opposition confirms that TUPSS, Inc. fully discloses that it is a franchise business and that The UPS Stores are individually owned and operated businesses.  See ECF 43-1 [Exhibit A to Receiver's Opposition] which is a screenshot from TUPSS's website titled "Brand Strength Brings Franchise Opportunities to You." That exhibit is replete with references showing that TUPSS, Inc. is a franchisor, and that "The UPS Store franchise centers remain locally owned and operated."

4

franchisor where there was no evidence of control).  That holding was and is entirely consistent with the law in other states about franchisor liability.  *See, e.g.*, *Doubletree Hotels Corp. v. Person*, 122 S.W.3d 917, 920 (Tex. App. 2003) ("[T]he vicarious liability of a franchisor in situations regarding negligence on the premises of franchise property is limited to those franchisors that maintain specific control of the activity concerning which negligence is charged."); *Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 47 (Ky. 2008) ("We adopt a rule in which the franchisor is vicariously liable for the tortious conduct of the franchisee when it, in fact, has control or right of control over the daily operation of the specific aspect of the franchisee's business that is alleged to have caused the harm."); *Vandemark v. McDonald's Corp.*, 153 N.H. 753, 761 (2006) ("[T]he weight of authority construes franchiser liability narrowly, finding that absent a showing of control over security measures employed by the franchisee, the franchiser cannot be vicariously liable for the security breach."); *Hong Wu v. Dunkin' Donuts, Inc.*, 105 F. Supp. 2d 83, 88 (E.D.N.Y. 2000) ("Several carefully-reasoned decisions by courts in other states address this issue.  As in New York, the franchisor typically is found to be vicariously liable only in situations where it exercised considerable control over the franchisee and the specific instrumentality at issue in a given case.").

After stating the legal standard in Mississippi, the *Allen* court found there was no indication that Choice Hotels "exercised control over, or had the right to control, the hotel's security."  *Id*.  As the court explained:

> [T]he majority view is that the franchisor must control or have the right to control the "specific instrumentality" that caused the plaintiff's harm for a court to apply vicarious liability. In looking at whether there is an agency relationship between the franchisor and the franchisee, the majority of courts do not consider the rules and regulations, which are part of the franchise agreement, as a measure of direction and control. Instead, the courts find that these very specific and strict rules are a way for the franchisor to protect its trademark and to protect the public. We find no evidence in the record which would show that Choice had the right to control the

5

day-to-day activities of the Gulfport Comfort Inn. Without such a showing of control or right to control, the franchisor should be granted summary judgment.

*Id.* at 827-828.

The holding in *Parmenter* is the same—the court there refused to hold McDonald's Corporation vicariously liable for the actions of an employee of a McDonald's franchise restaurant because McDonald's corporation was not responsible for hiring the employee or directing the employees' day-to-day activities. *See Parmenter*, 99 So. 3d 207.

Further, the Receiver fails to disclose that, just a few years after *Elder*, the Mississippi Supreme Court decided *Richardson v. APAC-Miss., Inc.*, 631 So. 2d 143, 151 (Miss. 1994), which effectively overruled *Elder* and its suggestion that a principal can be liable for the tort of an independent contractor based on the apparent authority theory. In *Mears*, 756 F. App'x 404, the Fifth Circuit stated that *Richardson* "clarified" *Elder* on that point. *Richardson* dealt with the distinction between an employee and an independent contractor and concluded that courts must look in the "four corners" of the contract between the two parties to determine the principal's ability to control the agent. The Fifth Circuit in *Mears* declined to follow the *Elder* court's "injection" of apparent authority (that is, did the customer believe he was dealing with Sears itself) into the independent contractor/employee analysis "[i]n light of *Richardson*'s four-corners doctrine." *Mears*, 756 F. App'x at 416 n.8. Accordingly, the Fifth Circuit determined that "it is unlikely that the [*Elder* court's] injection of such apparent-authority reasoning into an independent contractor analysis remains appropriate under existing law," reasoning that, "[s]ince *Elder* precedes *Richardson*, we view the latter case as clarifying the former." *Id.* There is no issue of independent contractor versus employee in this case because the Receiver concedes that the Herring Notaries are employees of Herring Ventures, *not* employees of TUPSS, Inc. (*See* Am. Compl. ¶¶ 60, 113-15.)

6

The Receiver asserts that it has alleged enough about "control" to survive a motion to dismiss because the Amended Complaint alleges that TUPSS, Inc. requires franchisees to offer notary services and because TUPSS, Inc. advertises those services.  (Opp. at 22-24.)  But as *Parmenter* and *Allen* show, those allegations are irrelevant.  McDonalds requires its franchisees to sell food and advertises its food, but that does not make McDonald's Corporation vicariously liable for a cook who assaults a customer who is unhappy about his food order.  *See Parmenter*, 99 So. 3d 207.  Similarly, Choice Hotels advertises that guests can stay at Comfort Inns and requires its franchisees to provide rooms, but those facts do not make Choice Hotels liable for the death of a guest who is killed by an intruder who breaks into a guest's room at Comfort Inn.  *See Allen*, 942 So. 2d at 827.  Likewise, the mere fact that TUPSS, Inc. advertises that its franchisees offer notary services does not make TUPSS Inc. liable for every error—whether due to negligence or gross negligence—that any notary makes.  The situation here is indistinguishable from that in *Parmenter* and *Allen*—and the Receiver does not even attempt to distinguish those cases.  There are no allegations in the Amended Compliant that TUPSS, Inc. hired the five Herring Venture employees who allegedly failed in their duties as notaries or that TUPSS, Inc. controlled—or even how TUPSS, Inc. could control—the day-to-day activities of those notaries.

The Receiver points out that *Parmenter* and *Allen* were decided on summary judgment and argues that, because she has alleged the conclusion that TUPSS, Inc. controls "every aspect" of each The UPS Store franchise location, she should be entitled to discovery to try to uncover facts to support that conclusion.  But the Receiver cannot distinguish the cases TUPSS, Inc. cited, showing that a conclusory allegation of "control" is insufficient to survive a motion to

dismiss absent factual allegations showing *how* the defendant exercised the required control.
Dismissal is therefore warranted.

### III.     TUPSS, INC. DID NOT CONSPIRE, AID AND ABET OR ACT NEGLIGENTLY.

The Amended Complaint asserted claims for conspiracy, aiding and abetting and
negligence against "ALL DEFENDANTS."  All of the paragraphs in those sections refer to
"Defendants" engaging in the conduct alleged without providing a single detail about which of
the ten Defendants did what.  In her Opposition, however, the Receiver states that it was
"reasonably clear" that the Receiver does *not* contend that TUPSS, Inc. joined in any conspiracy
or aided and abetted the alleged conspiracy, and that the Receiver's theory of liability against
TUPSS, Inc. at least as to those two Counts I and II is limited to vicarious liability, addressed
above.  (Opp. at 3 n.2.)

The Receiver's position about the negligence claim (Count III) has only gotten more
unclear.  Just like the conspiracy and aiding and abetting Counts, the negligence Count is leveled
against "ALL DEFENDANTS," and all of the paragraphs vaguely refer to "Defendants" as a
group.  Footnote 2 in the Receiver's Opposition does not, however, state that the negligence
claim (Count III) is based solely on a vicarious liability theory.  (*Id.*)  Elsewhere in the
Opposition, the Receiver asserts that, "As for The UPS Store, Inc. specifically, the amended
complaint alleges numerous facts that, if true, establish that The UPS Store, Inc. was negligent in
the supervision of its franchisee . . . . which it allowed to offer notary services . . . . without any
oversight."  (Opp. at 17.)  The Opposition does not state what facts the Receiver is referring to
and instead simply refers to paragraphs 53-66 of the Amended Complaint.  (*Id.* at 17 n.42.)
However, none of those paragraphs allege *any* facts about TUPSS, Inc.'s supervision, or failure
to supervise, Herring Ventures.  Likewise, there is no allegation in Count III (Negligenc) about
TUPSS, Inc.'s alleged "supervision" of Herring Ventures. Compounding the confusion, there is a

8

separate Count IV for negligent supervision, but that is asserted against only Herring Ventures and Rawlings & MacInnis.  The Amended Complaint does not fairly put TUPSS, Inc. on notice that it is being sued on the theory that TUPSS, Inc. is liable for the alleged misconduct of the Herring Notaries due to negligent supervision of Herring Ventures, and there no allegations of how TUPSS, Inc. was negligent in supervising its franchisee.

In all events, such a claim fails.  A claim of negligent supervision is simply another way of holding a franchisor vicariously liable for a franchisee's torts, so the analysis described in TUPSS, Inc.'s Motion to Dismiss and above applies—that is, TUPSS, Inc. could be held liable only if it "*had the right to control the specific instrumentality or aspect of the business that was alleged to have caused the harm.*"  *Allen*, 942 So. 2d at 822 (emphasis added).  There is no Mississippi decision suggesting that a franchisor can be liable for the alleged misconduct of a franchisee' employees based on any standard other than that set out in *Allen* and *Parmenter*.

## IV.   PUBLIC POLICY EXCEPTIONS TO THE DOCTRINE OF *IN PARI DELICTO* DO NOT APPLY TO THE RECEIVER'S CLAIM AGAINST TUPSS, INC.

The Receiver does not dispute that she stands in the shoes of Adams, such that the doctrine of *in pari delicto* applies.  (Op. at 25-26.)  Rather, the Receiver asserts that there is an exception to that doctrine for federal equity receiverships in order "to protect innocent creditors" and that there are "important public policy reasons" for permitting her to pursue claims against "defendants who are alleged to have aided and abetted a Ponzi scheme."  (Opp. at 25-27 (quoting, inter alia, *Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 966 (5th Cir. 2012)).)  But the Receiver concedes that she "does not intend to prove that The UPS Store, Inc. itself conspired with and aided and abetted Adams."  (Opp. at 3, n.2.)  Nor are there any allegations that any money flowed from the victims of Adams' scheme to TUPSS, Inc.  In other words, the Receiver is seeking a windfall from a franchisor with no connection to the underlying claims in this case.  Thus, "under the peculiar facts and the equities of [this] case," *Jones*, 666 F.3d at 966-

9

67, public policy weighs in favor of applying the doctrine of *in pari delicto* to bar the Receiver's claims against TUPSS, Inc.

## CONCLUSION

For the reasons set forth above and in its opening memorandum, TUPSS, Inc. respectfully requests that the Court dismiss the Amended Complaint in its entirety with prejudice.

ny-1756166
PD.27076650.1

Dated:        September 26, 2019

By: */s/ LaToya C. Merritt*
   LaToya C. Merritt, MSB #100054
   Jessica Terrill Pulliam, MSB #105510
   PHELPS DUNBAR, LLP
   4270 I-55 North Jackson, Mississippi 39211-6391
   Post Office Box 16114
   Jackson, Mississippi 39236-6114
   Telephone: 601-352-2300
   Telecopier: 601-360-9777
   Email: anderson@phelps.com
          merrittl@phelps.com
          pulliamj@phelps.com


   Mark R. McDonald (CA Bar No. 137001)
   *(Pro Hac Vice)*
   MORRISON & FOERSTER LLP
   707 Wilshire Boulevard
   Los Angeles, CA  90017
   Telephone:  213.892.5200
   Facsimile:   213.892.5454
   Email: MMcDonald@mofo.com

   Adam J. Hunt (NY Bar No. 4896213)
   (*(Pro Hac Vice)*
   MORRISON & FOERSTER LLP
   250 West 55th Street
   New York, New York 10019
   Telephone:  212.468.8000
   Facsimile:   212.468.7900
   Email: AdamHunt@mofo.com

   **Attorneys for Defendant**
   **THE UPS STORE, INC.**

11

*Certificate of Service*

I,   __LaToya C. Merritt___, do hereby certify that I electronically filed the above and

foregoing MEMORANDUM OF LAW IN SUPPORT OF THE UPS STORE, INC.'S MOTION

TO DISMISS THE AMENDED COMPLAINT with the Clerk of the Court using the CM/ECF

system which sent notification of such filing to the following counsel of record:

| | |
|---|---|
| Alysson Leigh Mills<br>Kristen D. Amond<br>Brent B. Barriere<br>Jason W. Burge<br>Rebekka C. Veith<br>FISHMAN HAYGOOD, LLP<br>201 St. Charles Avenue, Suite 4600<br>New Orleans, LA 70170-4600<br>(504) 586-5294<br>(504) 586-5250 (fax)<br>amills@fishmanhaygood.com<br>kamond@fishmanhaygood.com<br>bbarriere@fishmanhaygood.com<br>jburge@fishmanhaygood.com<br>rveith@fishmanhaygood.com<br><br>Lilli Evans Bass<br>Brown Bass & Jeter, PLLC<br>P.O. Box 22969<br>Jackson, MS 39225<br>(601) 487-8448<br>(601) 510-9934 (fax)<br>bass@bbjlawyers.com | ***ATTORNEYS FOR PLAINTIFF*** |
| G. Todd Burwell<br>Emily Kincses Lindsay<br>G. TODD BURWELL, PA<br>618 Crescent Blvd., Ste. 200<br>Ridgeland, MS 39157<br>(601) 427-4470<br>(601) 427-0189 (fax)<br>tburwell@gtbpa.com<br>elindsay@gtbpa.com | ***ATTORNEYS FOR RAWLINGS & MACINNIS, PA, JEANNIE CHISOLM, AND TAMMY VINSON*** |

12

| | |
|---|---|
| William Lee Guice, III<br>RUSHING & GUICE, PLLC – Biloxi<br>P.O. Box 1925<br>Biloxi, MS 39533-1925<br>1000 Government St., Suite E<br>Ocean Springs, MS 39564<br>(228) 374-2313<br>(228) 875-5987<br>bguice@rushingguice.com | ***ATTORNEY FOR HERRING VENTURES,<br>LLC, AUSTIN ELSEN, CHANDLER<br>WESTOVER, COURTNEY HERRING,<br>DIANE LOFTON, AND TAMMIE ELSEN*** |

THIS, the 26th day of September, 2019.

/s/ LaToya C. Merritt

LATOYA C. MERRITT

13