UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ALYSSON MILLS, IN HER CAPACITY
AS RECEIVER FOR ARTHUR LAMAR
ADAMS AND MADISON TIMBER
PROPERTIES, LLC,

        Plaintiff

v.

THE UPS STORE, INC.; HERRING
VENTURES, LLC d/b/a THE UPS
STORE;  AUSTIN ELSEN; TAMMIE
ELSEN;  COURTNEY HERRING;
DIANE LOFTON;  CHANDLER
WESTOVER; RAWLINGS
& MACINNIS, PA; TAMMY VINSON;
and  JEANNIE CHISHOLM,

        Defendants.

Case No. 3:19-cv-364-CWR-FKB

Arising out of Case No. 3:18-cv-252,
*Securities and Exchange
Commission v. Arthur Lamar Adams and
Madison Timber Properties, LLC*

Hon. Carlton W. Reeves,
District Judge

THE R&M PARTIES' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS THE AMENDED COMPLAINT

Defendants Rawlings & MacInnis, P.A. ("R&M"), Tammy Vinson ("Vinson"), and Jeannie

Chisholm ("Chisholm") (sometimes collectively referred to as the "R&M Parties") file this their Reply

in Support of their Motion to Dismiss ("Motion to Dismiss") [Doc. #26] the Amended Complaint

[Doc. #14] filed by Plaintiff Alysson Mills, in her capacity as the Court-appointed Receiver for the

estates of Lamar Adams and Madison Timber Properties, LLC, (the "Receiver"), and, in support of the

same, would show unto the Court as follows:

**I.    The Amended Complaint does not satisfy the pleadings standards of FRCP 9(b) or 8(a).**

The Receiver argues in her Opposition to Rawlings & MacInnis's and the UPS Store, Inc.'s

Motion to Dismiss (the "Opposition") [Doc. #43] that the Amended Complaint [Doc. #14] satisfies

the pleadings standards of both Federal Rule of Civil Procedure ("FRCP") 9(b) and 8(a).  According to

the Receiver, since she does not allege fraud nor is fraud an element of any of her claims, then a defect

in any fraud averment does not mean that no claim has been stated. Opp. pg. 6 (citing *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F. 3d 363, 368 (5th Cir. 2001)). The Receiver goes on to argue that the Amended Complaint, nonetheless, meets the pleadings standards for FRCP 9(b) and 8(a).   The Receiver's arguments, however, are without merit.

As an initial point, the Receiver argues that she did not plead any claims in which fraud is an element, therefore, any deficiency in those averments of fraud does not mean that no claim was stated. The Receiver relies on *Lone Star* for this proposition. *Lone Star*, 238 F. 3d at 368; see also Opp. pg. 6. The *Lone Star* Court, however, went on to state that "[t]he proper route is to disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated. There is a qualification. A district court need not rewrite such a deficient complaint." *Lone Star*, 238 F. 3d at 368. Though the Receiver does not explicitly assert any fraud claims against the R&M Parties, she does assert claims for civil conspiracy and aiding and abetting, and those claims must be supported by an underlying tort. As argued in the Motion to Dismiss, the underlying tort in this case is fraud (i.e. the Receiver alleges that the R&M Parties civilly conspired with and aided and abetted Lamar Adams ("Adams") in the perpetration of a fraud). As the underlying tort is fraud, any averments of fraud alleged to support those claims must be pled in accordance with FRCP 9(b). *Id.* ("Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not.").

To adequately plead under FRCP 9(b), one must state the "who, what, when, and where" of the fraud alleged. 2 Moore's Federal Practice § 9.03(b) (3d ed. 2012). The Receiver argues that she has met these requirements by specifically alleging that the R&M Parties "substantially assisted [Madison Timber Properties, LLC's ("Madison Timber")] growth" by notarizing fraudulent timber deeds that contained landowner signatures who were not present, by notarizing fraudulent timber deeds with blank signature lines, and by failing to examine the fraudulent timber deeds, which the Receiver alleges were violations

2

of the Mississippi Notary Law. Opp. pg. 6. These allegations, however, do not meet the requirements of FRCP 9(b).

The Receiver claims that the R&M Parties notarized fraudulent timber deeds without landowners present or with blank signature lines, but the Receiver does not state with any particularity how many deeds allegedly were notarized by the R&M Parties, which deeds were allegedly presented without a landowner present and which deeds were allegedly notarized with blank signature lines. Except for one representative excerpt, the Receiver has not referenced in or attached to her Amended Complaint any fraudulent timber deeds which she alleges were notarized by the R&M Parties. The specifics not provided by the Receiver are especially important in light of Adams's admission that he forged the timber deeds. Opp. pg. 13. If Adams forged signatures on the timber deeds, he certainly could have also forged or otherwise manipulated the notary acknowledgments on such timber deeds. The Receiver also does not state with any specificity when Adams/Madison Timber would have obtained or used such fraudulent timber deeds.[1] The one purported representative excerpt relied on by the Receiver to support her claim that the R&M Parties allegedly notarized fraudulent timber deeds is dated October 9, 2017, yet the Ponzi scheme began in 2011 and collapsed on or about April 19, 2018. Am. Compl. pgs. 2, 9. One purported representative excerpt of a fraudulent timber deed allegedly notarized by the R&M Parties only six months prior to the collapse of the Ponzi scheme does not lend credence to or support the Receiver's assertions that the R&M Parties substantially assisted in the Ponzi scheme's growth.

The Receiver makes these general allegations to support an alleged "course of conduct" by the

---

[1] The Receiver argues that a precise accounting of the number of fraudulent timber deeds is not required and argues that had the R&M Parties kept notary logs in compliance with the Mississippi Notary Laws, such information would be available. Opp. pg. 6. It is not the burden of the R&M Parties, however, to sufficiently plead the Receiver's allegations for her.

3

R&M Parties in notarizing fraudulent timber deeds, but the Receiver does not allege who was present for the notarizations of each fraudulent timber deed allegedly notarized by the R&M Parties, how many fraudulent timber deeds were allegedly notarized by the R&M Parties, when the R&M Parties allegedly notarized the fraudulent timber deeds or when this alleged course of conduct began, or where such alleged conduct took place. Opp. pg. 4. The Receiver also fails to allege who the investors in Madison Timber were, if they relied on fraudulent timber deeds, when they relied on the fraudulent timber deeds and whether such reliance reasonable. Clearly, the Receiver has not shown the "who, what, when, or where" as required for sufficient pleadings under FRCP 9(b).

In response to the R&M Parties' assertion that the Amended Complaint fails to satisfy FRCP 8(a), the Receiver argues that she has sufficiently pled her allegations, that the allegations are not speculative, and that the one representative notarization excerpt supports her claims. The Receiver, however, has not sufficiently pled her allegations so as to satisfy FRCP 8(a). As stated in the Motion to Dismiss, there are two considerations the Court must take into account at the motion to dismiss stage: (1) whether the allegations contain more than mere conclusory statements or legal conclusions that are "threadbare recitals of the elements of a cause of action" and (2) whether the complaint states a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).[2] Without restating the Motion to Dismiss *in toto*, the Receiver only makes "threadbare" allegations and legal conclusions that she attempts to cast as factual allegations in the Amended Complaint. See Motion to Dismiss pgs. 17-21. As the Receiver only makes these conclusory allegations, she has failed to satisfy the pleadings standards of FRCP 8(a).

## II.  The Receiver fails to state a claim for civil conspiracy against the R&M Parties.

---

[2] While at the motion to dismiss stage, the allegations typically must be taken as true, this general rule does not apply when the allegations are merely legal conclusions. Allegations that are merely legal conclusions do not have to be accepted as true. *Id.*

The Receiver in her Opposition argues that the Amended Complaint sufficiently pled an underlying wrong, that she was not required to show an overt act by the R&M Parties in furtherance of the Ponzi scheme, and that the R&M Parties knew or should have known of Adams' fraudulent activities. The Receiver's arguments, as explained below, are without merit.

First, the Receiver alleges that she has sufficiently pled an underlying wrong to support her claim for civil conspiracy. "[A] civil conspiracy claim cannot stand alone, but must be based on an underlying tort." *Fikes v. Wal-Mart Stores, Inc.*, 813 F.Supp.2d 815, 822 (S.D. Miss. 2011) (citation omitted). As stated in the Motion to Dismiss, the R&M Parties assert that the underlying tort in this case must be fraud based on the Receiver's allegations that Adams engaged in fraudulent conduct and that the R&M Parties conspired with him to accomplish the same. The Receiver argues that it is sufficient that she pled that the R&M Parties committed an underlying wrong (i.e. violations of the Mississippi Notary Laws) rather than a tort. To support her contention, the Receiver relies on *Rex Distributing Company, Inc. v. Anheuser-Busch, LLC*, 271 So. 3d 445, 455 (Miss. 2019). In *Rex*, the co-conspirators were alleged to have committed an underlying wrong (i.e. violations of the Beer Industry Fair Dealing Act or "BIFDA") rather than a tort. *Id.* But it is not necessarily an issue of whether a tort or a wrong can support claims for civil conspiracy and aiding and abetting. The issue is that in order for parties to have conspired or aided and abetted, they must have participated in the same action. Here, the Receiver claims the R&M Parties committed an underlying wrong by allegedly violating the Mississippi Notary Laws, while Adams committed an underlying wrong by defrauding investors. This situation is unlike that in *Rex* where the co-conspirators were both alleged to have violated BIFDA. *Id.* There cannot be a conspiracy to commit different unlawful acts.

The Receiver also claims that "[i]t is enough that Adams committed an 'underlying wrong,' and the Defendant notaries agreed to and participated in his course of action." Opp. pg. 4. The Receiver

argues that the "agreement to conspire 'may be express, implied, or based on evidence of a course of conduct.'" Opp. pg. 7 (citing *Bradley v. Kelley Bros. Contractors, Inc.*, 117 So. 3d 331, 338 (Miss. Ct. App. 2013)). The Receiver heavily relies on the course of conduct language to support her allegations that the R&M Parties were engaged in a civil conspiracy.  But *Bradley* also requires that "[f]or a civil conspiracy to arise, the alleged confederates must be aware of the fraud or wrongful conduct at the beginning of the agreement." *Id.*[3] The Receiver has not alleged any agreement between the R&M Parties and Adams or any specific knowledge of Adams' fraudulent conduct by the R&M Parties.

The Receiver contends that she is not required to demonstrate that the R&M Parties had knowledge of the Ponzi scheme. The Receiver alleges that, based on the number of fraudulent timber deeds allegedly notarized by the R&M Parties (which she has not specified) and the alleged notarizations of deeds without landowners being present (which she has not specified), the R&M Parties knew or should have known the timber deeds were fraudulent. But these allegations do not show any agreement by or between the R&M Parties and Adams and they do not show any knowledge by the R&M Parties of Adams' fraudulent activities. The Receiver does not specify how many fraudulent timber deeds were allegedly notarized by the R&M Parties or how many fraudulent timber deeds the R&M Parties would have had to allegedly notarize to impute knowledge of Adams' fraudulent scheme to the R&M Parties. Further, the Receiver does not make any allegation about or attach any original timber deed to demonstrate that the R&M Parties actually notarized a fraudulent timber deed or should have known such deeds were fraudulent. Without any factual allegations concerning the R&M Parties' knowledge of Adams' fraudulent activities, a claim for civil conspiracy cannot survive.

---

[3] This contradicts the Receiver's argument that she only must show that the R&M Parties and Adams formed a "common purpose." Opp. pg. 11 (citing *Aetna Ins. Co. v. Robertson*, 94 So. 7, 22 (Miss. 1922), modified on suggestion of error for other reasons, 95 So. 137 (Miss. 1923) ( A conspiracy arises from a "mere tacit understanding between the conspirators to work to a common purpose.") The Receiver, nonetheless, has failed to sufficiently allege a common purpose between the R&M Parties and Adams.

Further, the Receiver argues, though the R&M Parties did not raise it, that she is not required to show an overt act, and that it is sufficient that "[the R&M Parties] agreed to and participated in Adams's course of action by notarizing fake timber deeds." Opp. pg. 10. Yet again, as stated above, the Receiver fails to allege any agreement by the R&M Parties to participate in any "course of action" as there are no facts to support any agreement by or between the R&M Parties and Adams.  It is merely speculation and/or conclusory allegations by the Receiver that the R&M Parties knew of the fraudulent activities of Adams and that the R&M Parties agreed to participate in the same.

**III.    The Receiver fails to state a claim for aiding and abetting against the R&M Parties.**

The R&M Parties still maintain that Mississippi courts do not recognize a claim for aiding and abetting. Until Mississippi courts recognize a cause of action for aiding and abetting, the Receiver should not be permitted to allege such a claim against the R&M Parties. Therefore, the Receiver's claim for aiding and abetting should be dismissed with prejudice.

Should this Court determine that Mississippi does recognize a claim for aiding and abetting, the Receiver still must show that there is an underlying tort to support the claim (i.e. fraud), that the R&M Parties knew of Adams' fraudulent activity, and that the R&M Parties provided substantial assistance to Adams in the commission of the fraud, and, as stated above, she must sufficiently plead these allegations with particularity as required by FRCP 9(b). Restatement (Second) of Torts §876; *Fikes*, 813 F.Supp.2d at 822. The Receiver has not plead any of the above with particularity. As the arguments concerning civil conspiracy are substantially similar to those in connection with the aiding and abetting claim, the R&M Parties rely on their arguments above and in the Motion to Dismiss. Therefore, the Receiver's aiding and abetting claim should be dismissed.

**IV.    The Receiver fails to state a claim for negligence against the R&M Parties.**

The Receiver argues that the R&M Parties are liable for negligence because they failed "to

exercise reasonable care to avoid foreseeable injury to others." Opp. pg. 17 (citing *Fed. Sav. & Loan v. Tex. Real Estate Counselors, Inc.*, 955 F.2d 261, 265 (5th Cir. 1992)). However, as the Receiver has not shown that the R&M Parties knew of Adams' fraudulent activities, it cannot be said that the injuries to the investors of the Ponzi scheme were foreseeable. As foreseeability is an essential element of negligence, the lack of a foreseeable injury precludes any negligence claim. Further, as stated in the Motion to Dismiss, one of the essential elements for negligent supervision is that the employer had actual knowledge or constructive knowledge of the employee's unfitness or incompetence. See Motion to Dismiss pg. 20. The Receiver argues that Vinson and Chisholm were clearly unfit based on their violations of the Mississippi Notary Laws and that the R&M Parties acknowledged that the Receiver sufficiently alleged constructive knowledge of Vinson and Chisholm's unfitness. Opp. pg. 18. This is not true. The R&M Parties asserted that the Receiver failed to allege that R&M had any knowledge, actual or constructive, of Vinson and Chisholm's alleged unfitness. See Motion to Dismiss pg. 20. As the Receiver has failed to allege this element of negligent supervision, this claim must fail.

**V.      The doctrine of *in pari delicto* precludes the Receiver from asserting claims against the R&M Parties.**

The Receiver argues that the "innocent successor" exception to *in pari delicto* permits the Receiver to allege claims against professionals after she has stepped into the shoes of the wrongdoer. Opp. pg. 25. The Receiver cites to the Fifth Circuit case of *Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 966 (5th Cir. 2012) for the proposition that the application of *in pari delicto* to preclude claims by the Receiver against third parties would undermine the purpose of a receivership.  In *Jones*, however, the Fifth Circuit found that the bad actor in that case became separate from the entity in which the receiver stepped into the shoes of in order to prosecute claims and, as such, *in pari delicto* did not apply to preclude the receiver's claims. *Id.* at 995-97. Here, Adams, the bad actor, cannot be separated from Madison Timber such that Madison Timber would not stand *in pari delicto* to the R&M Parties (if the R&M Parties did

commit a wrong, which is denied). See Motion to Dismiss [Doc. #27] pg. 24-25. As such, the "innocent successor" exception does not apply in this case.

In addition, the Receiver argues that the Fifth Circuit has "flatly rejected" the argument made by the R&M Parties that the innocent successor exception would only apply to the Receiver's fraudulent transfer claims. Opp. pg. 27. This argument, however, is disingenuous on the part of the Receiver. First, the Fifth Circuit does not "flatly reject" the R&M Parties' argument that the innocent successor would only apply in cases involving fraudulent transfers. In *Zacarias v. Stanford International Bank, Ltd.*, 931 F. 3d 382, 369-97 (5th Cir. 2019), the Fifth Circuit merely addressed the Investor's Committee's (similar to the role of a receiver) standing to assert certain tort claims. Neither *in pari delicto* nor the innocent successor exception are addressed in that case. It should also be noted that *Zacarias*, the only Fifth Circuit Case cited by the Receiver for this proposition, involved fraudulent transfer claims.

Furthermore, the other cases relied on by the Receiver, none of which are Fifth Circuit cases, all involved fraudulent transfer claims. In *Official Stanford Investors Committee v. Greenberg Traurig, LLP*, 2014 WL 12572881 *4 (N.D. Tex. December 17, 2014) and *Janvey v. Willis of Colorado Inc.*, 2014 WL 12670763 *4 (N.D. Tex. December 5, 2014), the Court in both cases stated that "[t]his Court has already held that the in pari delicto defense has little application when a receiver seeks to reclaim assets for innocent investors." These actions to "reclaim assets" would be fraudulent transfer actions, or actions in which a third party received some asset of the Ponzi scheme that must be recovered by the Receiver. That is not the case here. The Receiver has not alleged,[4] and the R&M Parties did not receive, any type of benefit received from Adams/Madison Timber in connection with the Ponzi scheme. This lack of benefit to the R&M Parties means the Receiver cannot assert any action to reclaim any assets of the

---

[4] It should be noted that the Receiver claims that the notary services allegedly provided by the R&M Parties benefitted their business, yet the Receiver does not state what benefit the R&M Parties allegedly received in exchange for their alleged wrongful conduct. Opp. pg. 2.

Ponzi scheme (i.e. a fraudulent transfer claim) such that the innocent successor exception to *in pari delicto* would apply to allow the Receiver's claims against the R&M Parties to go forward.  As the Receiver has not cited any authority that contradicts the R&M Parties' argument that *in pari delicto* would bar claims of the Receiver outside of the fraudulent transfer context, the Receiver's argument is without merit.

The Receiver also argues that courts may interfere in the application of *in pari delicto* if public policy requires it.[5]  In support of this argument, the Receiver cites to the Mississippi cases of *Morrissey v. Bologna*, 240 Miss. 284 (1960) and *Rideout v. Mars*, 99 Miss. 199 (1911).  Those cases involved contracts that were void as a matter of public policy.  In *Morrissey*, the cause of action was based on an illegal liquor contract, and in *Rideout*, the cause of action was premised on an illegal insurance contract, both of which had specific public policy interests inherent in the statutory schemes under which each contract was considered.  The Receiver has not cited any cases outside of the illegal contract context, which would not apply in this case, and the Receiver has not articulated a specific public policy interest applicable in this case.   While public policy may be a consideration in whether a court should apply *in pari delicto*, simply arguing that there is a "'paramount public interest' in the Receiver's recovery" is not sufficient to preclude the application of *in pari delicto* to the Receiver's claims. Opp. pg. 27.

Though the Receiver argues that amendment under Fed. R. Civ. P. 15(a) rather than dismissal is appropriate, when such amendment would be futile, dismissal is appropriate. *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 367 (5th Cir. 2014).  As such, the R&M Parties respectfully request that their Motion to Dismiss the Amended Complaint be granted.

---

[5] The Receiver seems to argue that as the R&M Parties did not brief any public policy considerations in the Motion to Dismiss, the Court should summarily dismiss the R&M Parties' *in pari delicto* argument. Opp. pg. 27 (citing *Janvey v. Adams & Reese, LLP*, 2013 WL 12320921 *3 (N.D. Tex. Sept. 11, 2013) ("The parties have not briefed any public policy rationales, and thus the Court declines to dismiss the Receiver's claims on in pari delicto grounds.").  As the Receiver has now raised an unspecified public policy argument and the R&M Parties have responded, the Court should not summarily dismiss the R&M Parties' *in pari delicto* argument.

Respectfully submitted, this the 26ᵗʰ day of September, 2019.

**RAWLINGS & MACINNIS, P.A., TAMMY VINSON AND JEANNIE CHISHOLM**

By: */s/ G. Todd Burwell*

OF COUNSEL:

G. Todd Burwell (MSB #8832)
tburwell@gtbpa.com
Emily K. Lindsay (MSB #104963)
elindsay@gtbpa.com
G. TODD BURWELL, P.A.
618 Crescent Blvd., Suite 200
Ridgeland, MS  39157
Tel:     601-427-4470
Fax:     601-427-0189

**CERTIFICATE OF SERVICE**

I, G. Todd Burwell, one of the attorneys for Defendants Rawlings & MacInnis, P.A., Tammy Vinson and Jeannie Chisholm, do hereby certify that on this the 26ᵗʰ day of September, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. I certify that I have this day forwarded via the ECF system, a true and correct copy of the foregoing to all counsel of record who have registered with that system in this case.

*/s/ G. Todd Burwell*
