UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| ALYSSON MILLS, IN HER CAPACITY AS RECEIVER FOR ARTHUR LAMAR ADAMS AND MADISON TIMBER PROPERTIES, LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>THE UPS STORE, INC.; HERRING VENTURES, LLC d/b/a THE UPS STORE; AUSTIN ELSEN; TAMMIE ELSEN; COURTNEY HERRING; DIANE LOFTON; CHANDLER WESTOVER; RAWLINGS & MACINNIS, PA; TAMMY VINSON; and JEANNIE CHISHOLM,<br><br>        Defendants. | Case No. 3:19-cv-00364<br><br>Arising out of Case No. 3:18-cv-252, *Securities and Exchange Commission v. Arthur Lamar Adams and Madison Timber Properties, LLC*<br><br>Hon. Carlton W. Reeves, District Judge |

**MEMORANDUM IN SUPPORT OF
MOTION TO QUASH SUBPOENAS OR, ALTERNATIVELY,
MOTION FOR PROTECTIVE ORDER**

Alysson Mills, in her capacity as the court-appointed receiver for Arthur Lamar Adams and Madison Timber Properties, LLC (the "Receiver"), through undersigned counsel, files this memorandum in support of her motion to quash subpoenas issued by The UPS Store, Inc., or alternatively, for relief under Federal Rule of Civil Procedure 26(c).

**INTRODUCTION**

Without first coordinating with the Receiver or her counsel, UPS issued at least 32 subpoenas to investor-victims, demanding that they produce 13 categories of documents by July 8 and that they appear for depositions across the United States. The subpoenas caught everyone by

surprise. UPS's counsel emailed the Receiver's counsel copies of subpoenas on Thursday, June 17, and the Receiver's counsel asked to confer regarding their dates. Unbeknownst to the Receiver, however, UPS did not wait. The next evening, investor-victims started calling the Receiver to report that they were being served. Many are elderly and were confused and upset.

The Receiver immediately filed a motion for protective order[3] (last Monday) but the Court regarded that motion as premature.[4] When the parties informally discussed the subpoenas with the Court in a conference call (last Wednesday), UPS stated that it would not voluntarily withdraw the subpoenas. Another meet-and-confer would be futile and cost precious time. The Receiver now again formally requests that the Court enter a protective order precluding UPS from pursuing certain discovery from investor-victims by quashing, or at least limiting, the scope of UPS's subpoenas.

The subpoenas are overbroad and heavy-handed. As shown below, they seek information that is private and that is not relevant to any claim or defense in this case. This case is about whether UPS notaries stamped fake timber deeds but UPS's subpoenas seek, as just one example, investor-victims' personal accounting and tax information.

Investor-victims understandably have a lot of concerns. The Receiver currently is at a loss to address those concerns, and it is unfair to expect every investor-victim to hire a lawyer to help them understand their rights and obligations else risk the penalty of jail or fine.

Investors have already been victims once at the hands of Lamar Adams. They should not be re-victimized by the very entities who helped sustain the Madison Timber Ponzi scheme. Because the issues raised in this motion are time-sensitive, expedited consideration is warranted.

---

[3] Doc. 207. The Receiver also filed a motion for expedited consideration of her motion for protective order. Doc. 209.

[4] *See* June 22, 2021 text-only order denying the Receiver's Motion for Protective Order [Doc. 207] and Motion for Expedited Consideration [Doc. 209] without prejudice.

## ARGUMENT

On timely motion, the court may quash or modify a subpoena to protect a person subject to or affected by the subpoena. Fed R. Civ. P. 45(c)(3)(A). Quashing or modifying a subpoena is required, among other instances, when the subpoena "requires disclosure of privileged or protected matter" or "subjects a person to undue burden." *Id.*

To determine whether a subpoena subjects a person to undue burden, the Fifth Circuit considers the following factors: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). If, like here, the document subpoena is issued to a nonparty, the court may also consider "the expense and inconvenience to the non-party." *Id.* A "facially overbroad" subpoena presents an undue burden. *Id.*

Although the general rule is that only the person to whom the subpoena is directed has standing to object to its issuance, an exception applies where the challenging party "has a personal right or privilege in the subject matter or a sufficient interest in it." *Ferris Mfg. Corp. v. Thai Care Co.*, No. 4:17-cv-1024, 2019 WL 8223600, at *1 (N.D. Tex. Jan. 25, 2019) (internal citations omitted); *Total RX Care, LLC v. Great N. Ins. Co.*, 318 F.R.D. 587, 594 (N.D. Tex. 2017) ("A party, although not in possession or control of the materials sought in a subpoena and not the person to whom the subpoena is directed, has standing to file a motion to quash or modify under Federal Rule of Civil Procedure 45(d)(3) if it has a personal right or privilege in the subject matter of the subpoena or a sufficient interest in it."); *see also Field v. Anadarko Petroleum Corp.*, No.

4:20-cv-00575, 2020 WL 4937122, at *2 (S.D. Tex. Aug. 24, 2020) ("Parties unquestionably have limited standing to quash subpoenas served on non-parties pursuant to Rule 45.").

The Court need not rely solely on Rule 45, however, because any party has standing to move for a protective order to limit discovery under Rule 26(c). *Summit Health & Rehab Servs., Inc. v. Baker, Donelson, Bearman, Caldwell & Berkowitz*, No. 3:17-cv-127, 2017 WL 9360856, at *1 (S.D. Miss. Aug. 21, 2017); *Bounds v. Cap. Area Fam. Violence Intervention Ctr., Inc.*, 314 F.R.D. 214, 218 (M.D. La. 2016) ("[A] party has standing to move for a protective order pursuant to Rule 26(c) seeking to limit the scope of discovery, even if the party does not have standing pursuant to Rule 45(d) to bring a motion to quash a third-party subpoena."). The Court may issue an order under Rule 26(c)(1) "for good cause" precluding any type of discovery and protecting any party (or non-party) from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

Subpoenas are subject to the discovery limitations of Rule 26(b). *Coleman v. Swift Transportation Co. of Arizona, LLC*, No. 3:13-cv-3, 2013 WL 12178160, at *2 (N.D. Miss. Aug. 23, 2013). To be enforceable, subpoenas must seek information that is relevant to a party's claims or defenses, proportional to the needs of the case, not overly burdensome, and not unreasonably duplicative. *See* Fed. R. Civ. P. 26(b).

UPS's subpoenas are unenforceable under Rule 26 in many ways.

**1. UPS's subpoenas are overbroad and heavy-handed.**

This Court should quash, or otherwise limit the scope of, UPS's subpoenas because they seek information that is private, seek information that is irrelevant, and overall are not proportional to the needs of this case.

*UPS's requests seek information that is private.*

UPS's subpoenas seek information from investor-victims that is private. For instance, the subpoenas demand that investor-victims produce accounting and tax information, including (possibly privileged) communications with their accountant. UPS demands:

> 10. All DOCUMENTS reflecting or relating to YOUR accounting treatment of any investments with ADAMS or MADISON TIMBER, including but not limited to any COMMUNICATIONS with any accountants that RELATE to YOUR investment with ADAMS or MADISON TIMBER.[5]
>
> 11. All DOCUMENTS reflecting or relating to YOUR tax treatment of any investment with ADAMS or MADISON TIMBER.[6]

In addition to being irrelevant (see below), an investor's tax or accounting treatment, including communications with their accountant, is nobody's business, including the Receiver's. *See Natural Gas Pipeline Co. of America*, 2 F.3d 1397, 1411 (5th Cir. 1993) (tax returns are "highly sensitive documents" and are not routinely subject to discovery because of the "taxpayer's privacy concern at stake"); *see also, e.g.*, *Romero-Hernandez v. Alexander*, No. 3:08-cv-93, 2009 WL 10675548, at *5 (N.D. Miss. Nov. 20, 2009) ("relevance of . . . a non-party's financial information and banking records is simply outweighed by that individual's rights to privacy"); *In re Glitnir banki hf.*, No. 08-14757, 2011 WL 3652764, at *5 (Bankr. S.D.N.Y. Aug. 19, 2011) ("The Court may nevertheless quash or modify a subpoena to protect an individual non-party against the disclosure of personal, private financial information to avoid undue annoyance, embarrassment or oppression. . . . When a subpoena seeks the production of an individual's personal financial information, the court must balance the relevance of the information sought against the intrusion

---

[5] Exhibit A, Request No. 10.

[6] Exhibit A, Request No. 11.

into the affected individual's privacy interests."). UPS's attempt to obtain such sensitive information is improper.

UPS also demands that investors produce documents relating to Madison Timber that they provided to or received from the various government agencies.[7] If any investor-victim provided information to the FBI, U.S. Attorney's Office, or U.S. Probation Office, it likely would have been for the purpose of the government conducting its criminal investigation and eventual sentencing of Lamar Adams. That information likely is private (even the Receiver has not asked for such information). The Court might think it appropriate to ask the government agencies involved whether they object to the production of documents provided by or to them regarding Lamar Adams's criminal investigation.

*UPS's requests seek information that is irrelevant.*

UPS's subpoenas also seek irrelevant information. For instance, UPS's requests demand investor-victims' communications with the Receiver:

> 5. All DOCUMENTS that you have received from, or provided to, the RECEIVER, including but not limited to any COMMUNICATIONS between you and the RECEIVER.[8]
>
> 8. All DOCUMENTS reflecting or referring to any occasions you communicated with the RECEIVER.[9]

UPS also demands all documents that an investor-victim received from or provided to any person in connection with the S.E.C.'s action against Lamar Adams, the criminal action against Lamar Adams, the criminal action against Bill McHenry, and the six lawsuits filed by the Receiver.[10]

---

[7] Exhibit A, Request No. 6.

[8] Exhibit A, Request No. 5.

[9] Exhibit A, Request No. 8.

[10] Exhibit A, Request No. 7. In addition to seeking irrelevant information, this request is also clearly overbroad.

Any such documents are irrelevant to the Receiver's claims against UPS or UPS's defenses to those claims. This case is about whether UPS notaries stamped fake timber deeds and thereby assisted the Madison Timber Ponzi scheme. Individual investors' communications with the Receiver are not relevant to whether UPS's notaries stamped fake timber deeds. *See, e.g.*, *Ciuffitelli v. Deloitte & Touche LLP*, No. 3:16-cv-00580, 2018 WL 7893052, at *8 (D. Or. Dec. 10, 2018), *aff'd*, No. 3:16-cv-00580, 2019 WL 1442222 (D. Or. Feb. 21, 2019) (Defendant Deloitte failed to establish that documents "evidencing communications between [investor-plaintiffs] and the Receiver are relevant to any claim or defense at issue in this case. Deloitte has not demonstrated that documents created by Receiver (appointed in April of 2016) are relevant to whether Aequitas sold securities to [investor-plaintiffs] in violation of Oregon Securities law and whether Deloitte participated or materially aided in the sale of those securities.").

Separately, UPS demands that investor-victims produce "All DOCUMENTS referring to any losses you believe you have incurred because of your investment with ADAMS or MADISON TIMBER."[11] How an individual investor describes his or her "losses" is irrelevant here. The relevant losses in this case are the Receivership Estate's debts, which are the outstanding amounts due under outstanding promissory notes. To the extent that Request No. 12 seeks the Receiver's own damages calculation, that request is properly made to the Receiver, not investors.

Finally, investor-victims' accounting and tax information is also irrelevant. Investor-victims' personal finances, even whether they were more or less sophisticated, has no bearing on whether UPS notaries stamped fake timber deeds. *E.g.*, *Ciuffitelli*, 2018 WL 7893052, at *3 ("Plaintiffs status as accredited investors is not an issue in dispute, and the requested documents are

---

[11] Exhibit A, Request No. 12.

simply not relevant to establishing that the securities were exempt.") (citing cases). The sole purpose of this and other of UPS's requests is to embarrass and harass.

*UPS's requests are not proportional to the needs of this case.*

Certain of UPS's requests simply are not proportional to the needs of this case. *See Wiwa*, 392 F.3d at 818 ("A court may find that a subpoena presents an undue burden when the subpoena is facially overbroad."); Fed. R. Civ. P. 26(b) (discovery sought must be "proportional to the needs of the case"). For example, UPS demands that investor-victims produce any document that exists, for all of time, that relates to[12] Madison Timber:

> 3. All DOCUMENTS that RELATE TO your decision to investment [sic] with ADAMS and/or MADISON TIMBER.[13]
>
> 9. All DOCUMENTS referring to or relating to any investment with ADAMS or MADISON TIMBER.[14]

UPS's requests even make open-ended demands about persons other than the investor-victim himself or herself:

> 13. All DOCUMENTS that RELATE to any other PERSONS who invested with ADAMS or MADISON TIMBER.[15]

Just the fact that the requests have no temporal limit makes them overbroad. *See, e.g.*, *Barq v. Coca-Cola Co.*, No. 1:07-cv-1032, 2008 WL 11344704, at *4 (S.D. Miss. Apr. 28, 2008) (finding document request without a temporal limit "overly broad"). But the requests are also overbroad

---

[12] UPS defines both "documents" and "relates to" extremely broadly. *See* Exhibit A, Definitions at ¶ 9 ("The term "DOCUMENTS" has the broadest meaning possible under the Federal Rules of Civil Procedure, . . . ."); ¶ 10 ("The term "RELATE TO" means in whole or in any part alluding to, responding to, concerning, relating to, connected with, involving, commenting on, in respect of, about, associated with, discussing, evidencing, showing, describing, reflecting, analyzing, summarizing, memorializing, consisting of, constituting, identifying, stating, tending to support, tending to discredit, referring to, or in any way touching upon.").

[13] Exhibit A, Request No. 3.

[14] Exhibit A, Request No. 9.

[15] Exhibit A, Request No. 13.

(and irrelevant) because they could capture documents or communications that investor-victims had with anyone—family, friends, trusted advisors—about their involvement in the Madison Timber Ponzi scheme, including the effect that the fraud had on their personal and financial lives.

### 2. UPS has exceeded the number of depositions it is allowed.

In addition, UPS has well exceeded the number of depositions it is allowed. The Court's case management order provides that "[d]epositions are limited to the parties, experts, and no more than 12 fact witness depositions per party without additional approval of the Court." [Doc. 67].[16] Investor-victims are neither parties nor experts. With its subpoenas to depose at least 32 investors, UPS has exceeded its allowance by nearly threefold without seeking additional approval of the Court. For this reason alone, the Court should quash UPS's subpoenas for depositions.

### 3. Expedited consideration is warranted here.

Because UPS's subpoenas command investors to produce documents by July 8 at 10:00 a.m., the Receiver requests expedited consideration of this motion. Although Local Rule 7 provides for responses to motions to be filed within 14 days, an expedited briefing schedule is warranted so that the Court can consider these issues expeditiously.

To ensure that the Court has time to rule on this motion before July 8, the Receiver proposes that UPS's opposition be due on Wednesday, June 30 and the Receiver's reply be due by Friday, July 2. The Receiver, however, would welcome dates that might result in an earlier resolution.

---

[16] The Court's Case Management Order has been amended to adjust deadlines, but no order has issued affecting the discovery provisions and limitations set forth in the Court's original order.

## CONCLUSION

The Court has broad discretion to enter protective orders generally, and there is good cause to enter such an order here. Relief from UPS's heavy-handed subpoenas is warranted.

June 28, 2021

Respectfully submitted,

*/s/ Lilli Evans Bass*

Lilli Evans Bass, Miss. Bar No. 102896
BROWN BASS & JETER, PLLC
1755 Lelia Drive, Suite 400
Jackson, Mississippi 39216
Tel: 601-487-8448
Fax: 601-510-9934
bass@bbjlawyers.com

*/s/ Kristen D. Amond*

Brent B. Barriere, *admitted pro hac vice*
FISHMAN HAYGOOD LLP
201 St. Charles Avenue, Suite 4600
New Orleans, Louisiana 70170
Tel: 504-586-5252
Fax: 504-586-5250
bbarriere@fishmanhaygood.com
*Primary Counsel*

Kristen D. Amond, *admitted pro hac vice*
MILLS & AMOND LLP
650 Poydras Street, Suite 1525
New Orleans, Louisiana 70130
Tel: 504-383-0332
Fax: 504-733-7958
kamond@millsamond.com

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of Court using the ECF system which sent notification of filing to all counsel of record.


Date:   June 28, 2021                                      */s/ Kristen D. Amond*