IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**ALYSSON MILLS**, *in her Capacity as Receiver for Arthur Lamar Adams and Madison Timber Properties, LLC*     **PLAINTIFF**

v.     Civil Case No. 3:19-cv-00364-CWR-BWR

**THE UPS STORE, INC.; HERRING VENTURES, LLC,** *d/b/a The UPS Store*; **AUSTIN ELSEN; TAMMIE ELSEN; COURTNEY HERRING; DIANE LOFTON; CHANDLER WESTOVER; and AMERICAN CASUALTY COMPANY OF READING PA**     **DEFENDANTS**

## ORDER GRANTING IN PART AND DENYING IN PART RECEIVER'S MOTION TO COMPEL

BEFORE THE COURT is the Motion to Compel [437] and Memorandum [438] filed by Alysson Mills, in her capacity as the court-appointed receiver for Arthur Lamar Adams and Madison Timber Properties, LLC (Receiver). Defendant American Casualty Company of Reading, Pennsylvania (American Casualty) has filed a Response [443] and Memorandum [444]. Receiver filed a Reply [446]. Receiver moves to compel American Casualty to supplement its responses to Receiver's Interrogatories 2 through 6. Having considered the matter, American Receiver's Motion to Compel should be granted in part and denied in part.

I. BACKGROUND

American Casualty issued a series of insurance policies providing notary errors and omissions coverage to Herring Ventures, LLC (Herring Ventures). Sec. Am. & Suppl. Compl. [348] at 2. The policies renewed yearly beginning in April

1

2014 until April 2019. *Id.* American Casualty concluded that multiple instances of Herring Ventures' notaries' errors or omissions were "related wrongful acts" falling within the 2017-18 policy and tendered $100,000.00 Order [434] at 1. The policies defined "related wrongful acts" as "'wrongful acts' that are temporally, logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision." [443-1] at 2. Receiver requests a declaratory judgment in her favor declaring to what extent the policies provide "coverage for each wrongful notarial act, and relatedly, whether American Casualty in fact exhausted its coverage with a single payment of $100,000." Receiver's Reply [446] at 5.

United States District Judge Carlton W. Reeves dismissed Receiver's Complaint against American Casualty to the extent it asserted a tort claim for bad faith denial of insurance benefits. Order [434]. Judge Reeves observed that Mississippi "[p]recedent indicates that an injured party may seek a declaratory judgment on coverage but not assert tort claims against the tortfeasor's insurer. *See Jackson v. Daley*, 739 So. 2d 1031, 1038 (Miss. 1999). Any such tort claims here must be dismissed." *Id.* at 2.

Receiver's declaratory action to determine coverage remains. Receiver moves to compel American Casualty to supplement its responses to Receiver's Interrogatories 2 through 6. Interrogatories 2 and 3 ask American Casualty to identify who Barry Pomerantz, American Casualty's claims specialist, consulted or communicated with about evaluation of Herring Ventures' claims, and the substance of the consultation or communication. Receiver's Mem. [438] at 13.

Interrogatories 4 through 6 ask American Casualty to detail why it found the policies do not provide coverage for all the notaries' errors and omissions and identify the documents supporting that contention. *Id.* at 14. Receiver argues that she is "seek[ing] to determine how American Casualty concluded—and on what basis—that all of the individual notaries' errors and omissions in notarizing the fake timber deeds used by Adams and Madison Timber constitute 'related wrongful acts' within one policy period, despite those hundreds of notarizations taking place over several years by several different notaries, causing damages to several different investors." Receiver's Mem. [438] at 12.

American Casualty did not provide a substantive response to these Interrogatories. *Id.* at 13-15. American Casualty refused to answer on grounds that the Interrogatories asked for irrelevant information and on grounds of attorney-client privilege or the work product doctrine. *Id.*; *see* Def.'s Mem. [444] at 7.

## II. DISCUSSION

Mississippi's substantive law governs the insurance coverage determination. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 2d 1188 (1938). Federal procedural law applies. Federal Rule of Civil Procedure 26(b)(1) defines the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

"[A] party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a). The party moving to compel bears the initial burden of showing that the information sought is relevant, and the burden then shifts to the party resisting discovery to specifically show how each discovery request is not relevant or how each question is overly broad, burdensome or oppressive. *See Phi Theta Kappa Honor Soc'y v. Honorsociety.org, Inc.*, No. 3:22-cv-208-CWR-RPM, 2024 WL 4527086, at *2 (S.D. Miss. Sept. 24, 2024) (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)). The moving party's initial "burden of establishing relevancy in a motion to compel stems from Rule 26, which outlines the scope of discovery." *Lewis v. Fusio Med. Devices, LLC*, No. 3:23-cv-00472-DPJ-ASH, 2024 WL 4527788, at *5 (S.D. Miss. Oct. 18, 2024) (citing *Amos v. Taylor*, No. 4:20-cv-7-DMB-JMV, 2020 WL 7049848, at *5 (N. D. Miss. Dec. 1, 2020)).

This is the second time that the issue of what American Casualty calls claim handling, underwriting, and bad faith discovery has been in dispute between Receiver and American Casualty. The first occasion was when American Casualty moved for a protective order to limit the deposition of its 30(b)(6) designee, claims specialist Barry Pomerantz. Am. Cas. Mot. [427]. In that dispute, American Casualty's Motion was denied because American Casualty asked the undersigned to prohibit questioning regarding claim handling and bad faith discovery as irrelevant without providing a particular and specific demonstration of fact as to what it

4

meant by claim handling and bad faith discovery or pointing to a discovery ruling like the one it proposed. Order [439] at 5. In this second dispute, American Casualty again has not provided discovery opinions where the relief it requests has been granted, but it does better explain what type of discovery it claims is irrelevant.

It is Receiver though who has the initial burden of showing relevancy, and her initial Memorandum skips over the issue of relevancy and is spent arguing that the information sought is not privileged or that American Casualty waived privilege. Receiver's Mem. [438] at 1-30. American Casualty's Response points out that Receiver avoids discussing relevancy, and in reply, Receiver makes this misstatement: "*[I]rrelevancy*, as this Court has recognized, is not grounds to withhold information." Receiver's Mem. [446] at 4 (emphasis in original).

To state that "irrelevancy is not grounds to withhold information" contradicts Federal Rule of Civil Procedure 26(b)(1)'s limitation of discovery to "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The Court's Order denying American Casualty's Protective Order quoted Federal Rule of Civil Procedure 30(c)(2) which provides that "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3). Order [439] at 5. *In a deposition,* unless a protective order is in place prior to the deposition that limits the subject matter of the deposition, objections may be made, but the deponent must answer.

5

American Casualty asks the undersigned to make deductions about what is discoverable from dispositive rulings where insurance coverage was decided. Am. Cas. Mem. [444] at 12, 16. American Casualty submits that under Mississippi law, interpretation of an insurance policy is a question of law and courts may not "resort to extrinsic evidence or rules of contract construction if policy provisions are unambiguous." *Id.* (citing *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 429 (5th Cir. 2007)). When the policy terms are plain and unambiguous, the court uses their plain and ordinary meaning and applies the terms as writttelegan. *Id.* at 7-8 (citing *AXA Re Prop. & Cas. Ins. Co. v. Day*, 162 F. App'x 316, 322 (5th Cir. 2006)). American Casualty submits that the policies define "wrongful act" and "related wrongful act," and any explanatory materials about those terms or internal communications among claim handlers, counsel, and the insured are irrelevant and cannot be used to interpret coverage. *Id.* at 12-13.

American Casualty lists the elements for establishing a bad faith insurance claim under Mississippi law. *Id.* at 10. The plaintiff must show that the insurer (1) "lacked an arguable or legitimate basis for denying the claim" and (2) "committed a willful or malicious wrong or acted with gross and reckless disregard for the insured's rights." *Id.* (quoting *Jenkins v. Ohio Cas. Ins. Co.*, 794 So. 2d 228, 232 (Miss. 2001)). American Casualty reasons that, because there is only a legal question of coverage, there should not be discovery about how American Casualty handled the claim because that type of discovery goes to whether the insurer lacked an arguable or legitimate basis for denying the claim. *Id.* at 6-8.

6

Neither side to this dispute offered it, but the Mississippi Supreme Court held in *Hinton v. Pekin Ins. Co.*, that a claim manager's "opinion on coverage is not relevant" because "interpretation of an insurance policy is a question of law." 268 So. 3d 543, 552 (Miss. 2019) (quoting *Minnesota Life Ins. Co. v. Columbia Cas. Co.*, 164 So. 3d 954, 967 (Miss. 2014)). Citing *Hinton*, the Mississippi Supreme Court found in *VT Halter Marine, Inc. v. Certain Underwriters of Lloyd's of London Subscribing to Pol'y No. B0507M17PH04660* that "this Court need not consider the competing opinions of the parties' employees when interpreting the insurance policy, as this case involves a purely legal issue of contract interpretation." 386 So. 3d 722, 725 (Miss. 2024). From *Hinton* and *VT Halter Marine, Inc.*, it is concluded that how American Casualty or its employees interpreted the operative policy terms and their basis for believing that their construction of the disputed provisions is correct is irrelevant and not discoverable.

Neither party has cited discovery opinions on point. The undersigned found no discovery opinions in the context of Mississippi law that address a dispute like this one but a handful of opinions by outside courts that have. The rationale of these outside opinions is persuasive and consistent with the reasoning in *Hinton* and *VT Halter Marine, Inc.*

In *Cracker Barrel Old Country Store, Inc. v. Cincinnati Ins. Co.*, the United States District Court for the Middle District of Tennessee stated:

> Courts generally agree that underwriting and claims handling procedures and practices have nothing to do with the construction and interpretation of insurance policies. Thus, what those policies or practices were, and whether Cincinnati followed its own procedures

7

> and practices have no bearing on the meaning, interpretation or construction of the policy language. Accordingly, courts have held that underwriting and claims manuals and procedures are irrelevant to the issue of coverage.

No. CV 3:07-0303, 2009 WL 10692074, at *3 (M.D. Tenn. Mar. 20, 2009).[1]

In *Cracker Barrel Old Country Store, Inc.*, the Middle District of Tennessee denied the plaintiff's motion to compel the claims file "to include documents relating to any investigation, actions, measures or other steps [the insurer] took," finding that "the contents of the claims file – or whether [the insurer] investigated this claim at all – have nothing to do with whether the provisions of these policies obligate [the insurer] to defend and indemnify Cracker Barrel in the EEOC lawsuit." *Id.* The Middle District of Tennessee found "[t]he identities of [the insurer's] employees who may have made decisions regarding the underwriting or sales of the Cracker Barrel policies, or the handling of the Cracker Barrel claim, are simply not relevant to the remaining issue – the proper interpretation and construction of the policy provisions." *Id.* at *4.

In *Cincinnati Ins. Co. v. Fish*, the United States District Court for the District of Maryland precluded inquiry into the drafting history of the policy because "one party's understanding of the terms of the policy is not material to the construction of unambiguous policy terms." No. CV RDB-19-3355, 2021 WL 1658469, at *2 (D. Md. Apr. 27, 2021). The District of Maryland precluded inquiry

---

[1] (citing *Garvey v. National Grange Mut. Ins. Co.*, 167 F.R.D. 391, 396 (E.D. Pa. 1996); *Hammond v. Pacific Mut. Life Ins. Co.*, 159 F. Supp. 2d 249, 255 (E.D. Va. 2001); *State Farm Fire & Cas. Co. v. Valido*, 662 So.2d 1012, 1013 (Fla. Dist. Ct. App. 1995).

into "claims handling guidelines, policies, procedures, and training materials" because "these materials are not discoverable where the issue is the construction of an unambiguous insurance policy and its application to the loss claimed by the insured." *Id.* In *Bayshore Recycling Corp. v. ACE Am. Ins. Co.,* the United States District Court for the District of New Jersey found "[d]iscovery relating to claims personnel, claims handling procedures and guidelines, and best practices is not directly relevant to the contract claims in Count I and Count II." No. 19-cv-21618-MCA-ESK, 2020 WL 1986484, at *2 (D.N.J. Apr. 27, 2020).

Two opinions from the United States District Court for the Southern District of Florida sum up what is generally discoverable where the only issue is a legal determination regarding policy interpretation and coverage. In *Medmarc Cas. Ins. Co. v. Ventura,* the dispute centered on the meaning of the language in the insurance policy which stated: "Two or more 'Claims' arising out of a single act or omission, . . . or a series of "Related acts or omissions" . . . shall be treated as a single 'Claim.'" No. 07-23300-CIV, 2008 WL 4371311, at *1-2 (S.D. Fla. Sept. 19, 2008). The policy had a $500,000.00 per claim limit of liability, and an aggregate $1 million limit of liability. *Id.* at *1. The insurer contended that its limit of liability was $500,000 because all alleged acts or omissions committed were "temporally, logically or causally connected by any common fact, circumstance, situation, transaction, advice or decision." *Id.* at *2. The defendants asserted that the $1 million aggregate limit of liability was applicable because the allegations in the underlying lawsuit against the insured constituted "multiple occurrences." *Id.*

9

The United States District Court for the Southern District of Florida granted in part and denied in part the insurer's motion for protective order to limit the deposition of the insurer's corporate representative and granted in part and denied in part the defendants' competing motion to compel. *Id.* at 5. The court found irrelevant to coverage: (1) how the insurer interpreted the policy language in the past, (2) "the interpretation of the applicable limits of liability with respect to multiple claims pursuant to the terms of the policies," and (3) the "interpretation, enforcement and meaning of the operative policy terms that the [insurer] relie[d] upon in support of its contention that the malpractice claims are related and/or logically connected by common events, facts and/or transactions." *Id.* at *3. The court found that while the insurer's "basis for believing that its construction of the disputed provisions is correct" was irrelevant to determining coverage, what was relevant to coverage were "[the] facts, events and circumstances relating to the [insurance company's] contention that the malpractice claims are related and/or arise out of common facts, events and/or transactions[.]" *Id.* at *2, *4.

In *Ventron Mgmt., LLC v. Tokio Marine Specialty Ins. Co.*, the Southern District of Florida rejected the insurance company's position that no corporate representative deposition should be allowed where the only issue was insurance coverage and rejected the plaintiff's request for discovery irrelevant to coverage. No. 20-cv-80262, 2020 WL 8614606, at *4 (S.D. Fla. Dec. 21, 2020). The court found "that certain limited testimony may be elicited at the corporate representative's deposition" but "deposition questions regarding interpretation of the insurance

10

policy, underwriting of the insurance policy, documents and communications regarding the claims and policies, and [the insurance company's] candid interpretations of disputed policy language are all irrelevant and shall not be permitted." *Id.* The court found the plaintiff could "inquire into (1) the factual basis for [the insurer's] coverage position; (2) the specific policy provisions which are applicable to this dispute, as well as the facts which make those policy provisions applicable; and (3) the facts supporting [the insurer's] affirmative defenses." *Id.*

Receiver's Motion to Compel is granted in part and denied in part. American Casualty is compelled to provide substantive responses to Interrogatories 2 through 6 to the extent those interrogatories ask for the policy provisions that are applicable to the dispute and the factual basis for American Casualty's contention that Herring Ventures' claims are "related wrongful acts" because they are "'wrongful acts' that are temporally, logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision." Am. Cas. Resp. Ex. [443-1] at 2. The opinions of American Casualty and its employees about their interpretation of "wrongful act," "related wrongful acts" and what is "temporally, logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision" as well as rules, guidelines, procedures, and explanatory material that were utilized when processing Herring Ventures' claims are not discoverable because they have no bearing on construction of the policies. Premium information is not relevant to construction of the policies. But the coverage determination will require comparing the policy terms to facts, meaning

11

the policy-triggering facts American Casualty relied on to make the coverage determination are discoverable. Those facts might be found in American Casualty's internal communications.

American Casualty timely raised relevancy objections, and Receiver's privilege and work product arguments do not overcome American Casualty's valid relevancy arguments. American Casualty must update its responses to Interrogatories 2 through 6 to provide the applicable policy terms and facts that make those terms applicable. If privilege and work product disputes remain after American Casualty updates its responses to Interrogatories 2 through 6, then a motion tailored to that dispute may be filed.

Note that "[a] Good Faith Certificate [Official Form No. 4] must be filed with all discovery motions." L.U. Civ. R. 37(a). The attachment of an Official Form No. 4 Good Faith Certificate is a mandatory prerequisite to the consideration of a discovery motion. In the future, discovery motions like Receiver's that are filed with an informal good faith certificate and not Form 4 will be denied without prejudice as a motion submitted in improper form. Counsel are required to meet and confer by telephone or in person before signing Form 4. Email and letter communications alone do not satisfy the good faith, meet-and-confer requirement. *See Ross v. Citifinancial, Inc.,* 203 F.R.D. 239, 240 (S.D. Miss. 2001) ("This prerequisite is not an empty formality."). Finally, Local Uniform Civil Rule 7(b)(5) provides that "[m]ovant's original and rebuttal memorandum briefs together may not exceed a total of 35 pages, and respondent's memorandum brief may not exceed 35 pages."

L.U. Civ. R. 7(b)(5). Receiver's briefing exceeded the 35-page limit. Pages exceeding Local Uniform Civil Rule 7(b)(5)'s 35-page limit will not be considered in future filings.

## III.  CONCLUSION

**IT IS THEREFORE ORDERED** that Receiver's Motion to Compel [437] is **GRANTED IN PART AND DENIED IN PART**.

**SO ORDERED** this 18th day of February 2025.

*s/* *Bradley W. Rath*
BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE